**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JONATHAN AGUILAR-VAZQUEZ, ADESSA CONSULTING, INC. and TINA BURNS, individually and on behalf of all those similarly situated, | ) | |
| Plaintiff, | ) | Case No.: 6:26-cv-03218-MBB |
| v. | ) | |
| RUSSELL CELLULAR, INC., and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | ) | |
| Defendants. | ) | |

**DEFENDANT RUSSELL CELLULAR, INC.'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I. Introduction ........ 1

II. Factual Background and the Complaint ........ 1

A. The Parties ........ 1

B. Plaintiffs Do Not Know if Their Non-Sensitive Data Was Misused or Whether Any Data Security Measures Were Actually Insufficient ........ 2

C. The Claims Against Russell Cellular and the Applicable States' Laws ........ 3

III. Pleading Standards ........ 5

IV. Argument ........ 6

A. All Plaintiffs Lack Article III Standing ........ 6

B. Count 1 Fails to State a Claim for Negligence Because of the Lack of an Independent Duty and the Economic Loss Rule ........ 9

C. Count 2 Falis to State a Claim for Negligence *Per Se* Because It is Not a Standalone Claim and There is No Mechanism To Make it One ........ 12

D. Count 3 Fails to State a Claim for Breach of Implied Contract Because The Complaint Pleads No Mutual Assent, No Terms, and No Damages ........ 13

E. Count 5 Does Not State a Claim for Unjust Enrichment Because It is not a Catchall Claim for Relief ........ 16

F. Count 6 Fails to State a Claim under the MMPA ........ 17

G. Count 7 Fails to State a Claim under New York Gen. Bus. Law § 349 Because there is No Misuse of Data, No Deceptive Conduct and No Injury ........ 19

H. Count 8 Fails to State a Claim under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") ........ 20

I. Count 9 Fails to State a Claim for Declaratory and Injunctive Relief ........ 23

V. CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
96 N.Y.2d 280 (2001)....................11

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
49 Misc. 3d 1027, 19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015)....................19

*Adams v. Nissan N. Am., Inc.*,
395 F. Supp. 3d 838 (S.D. Tex. 2018)....................17

*Alfred Dunhill Ltd. v. Interstate Cigar Co*.,
499 F.2d 232 (2d Cir. 1974)....................12, 20

*Allied Servs., LLC v. Smash My Trash, LLC*,
No. 21-CV-00249-SRB, 2024 WL 2842633 (W.D. Mo. May 16, 2024)....................24

*Allied Servs., LLC v. Smash My Trash, LLC*,
153 F.4th 600 (8th Cir. 2025)....................24

*Barker v. Nestle Purina PetCare Co.*,
601 F. Supp. 3d 464 (E.D. Mo. 2022)....................18

*Bedgood v. Nissan N. Am., Inc.*,
2016 WL 3566689 (W.D. Tex. June 24, 2016)....................23

*Berry v. Indianapolis Life Ins. Co.*,
608 F. Supp. 2d 785 (N.D. Tex. 2009)....................21

*Candelaria v. B.C. Gen. Contractors, Inc.*,
236 Mich. App. 67 (1999)....................12

*Carlsen v. GameStop, Inc.*,
833 F.3d 903 (8th Cir. 2016)....................15

*Chapman v. Commonwealth Land Title Ins. Co.*,
814 F. Supp. 2d 716 (N.D. Tex. 2011)....................17

*Collins v. San Antonio Dodge Chrysler Jeep Ram*,
2025 WL 3143640 (W.D. Tex. Nov. 10, 2025)....................22

*Colson v. Hennepin Cnty.*,
169 F.4th 773 (8th Cir. 2026)....................5

*Corsello v. Verizon N.Y., Inc*.,
18 N.Y.3d 777 (2012)....................16

*Craggs v. Fast Lane Car Wash & Lube, L.L.C.*,
402 F. Supp. 3d 605 (W.D. Mo. 2019)....................18

*Davies v. S.A. Dunn & Co.*,
200 A.D.3d 8 (3d Dep't 2021)....................11

*Davies v. S.A. Dunn & Co.*,

38 N.Y.3d 902 (2022)....11

*Delta Airlines, Inc. v. Spirit Airlines, Inc.*,
2004 WL 67685 (Mich. Ct. App. Jan. 15, 2004) .... 16

*Devine v. Horizontal Integration, Inc.*,
2025 WL 3687972 (D. Minn. Dec. 19, 2025).... 6, 24

*Doe v. Henry Ford Health Sys.*,
308 Mich. App. 592 (2014) .... 7, 15

*Dorman v. Emerson Elec. Co.,*
23 F.3d 1354 (8th Cir. 1994).... 4

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546 (2005).... 3

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) .... 7

*Fletcher v. Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP*,
537 F. Supp. 2d 1028 (W.D. Mo. 2008).... 5, 9

*Foley v. Daniel*,
346 S.W.3d 687 (Tex. App. 2009).... 17

*Foulger v. Avertest, LLC*,
2023 WL 12237244 (E.D. Mo. July 7, 2023) .... 4

*FritzCo LLC v. Verizon Commc'ns Inc.*,
2026 WL 734776 (S.D.N.Y. Mar. 16, 2026) .... 12

*FTC v. Johnson*,
800 F.3d 448 (8th Cir. 2015) .... 12

*Fultz v. Union-Commerce Assocs.*,
470 Mich. 460 (2004) ....10, 11

*GCC Rio Grande, Inc. v. Paso Del Norte Ready-Mix, Inc.*,
2014 WL 12863360 (W.D. Tex. June 26, 2014) .... 21

*Geivett v. AMC Mgmt., LLC*,
158 F.4th 900 (8th Cir. 2025).... 5

*Greco v. Syracuse ASC, LLC*,
218 A.D.3d 1156 (4th Dep't 2023) .... 7

*Greenstein v. Noblr Reciprocal Exch.*,
2024 WL 3886977 (9th Cir. Aug. 21, 2024) .... 8

*Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*,
485 F. Supp. 3d 885 (E.D. Mich. 2020).... 9, 10, 12, 14

*Hale v. Emerson Elec. Co.*,
942 F.3d 401 (8th Cir. 2019) .... 18

*Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*,

480 S.W.2d 607 (Tex. 1972) .......... 15

*Hernandez v. Safariland, LLC*,
824 F. Supp. 3d 581 (W.D. Tex. 2026) .......... 23

*In re Burlington N. Santa Fe Ry. Co.*,
606 F.3d 379 (7th Cir. 2010) .......... 4

*In re Crop Inputs Antitrust Litig.*,
172 F.4th 570 (8th Cir. 2026) .......... 5, 9

*In re Flagstar Dec. 2021 Data Sec. Incident Litig.*,
2024 WL 5659583 (E.D. Mich. Sept. 30, 2024) .......... 7

*In re Samsung Data Sec. Breach Litig.*,
761 F. Supp. 3d 781 (D.N.J. 2025) .......... 6, 8

*In re St. Jude Med., Inc.*,
425 F.3d 1116 (8th Cir. 2005) .......... 3, 4

*In re SuperValu, Inc.*,
870 F.3d 763 (8th Cir. 2017) .......... 5, 6

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019) .......... 12

*In re Zappos.com, Inc.*,
2013 WL 4830497 (D. Nev. Sept. 9, 2013) .......... 15

*Irwin v. Jimmy John's Franchise, LLC*,
175 F. Supp. 3d 1064 (C.D. Ill. 2016) .......... 15

*Jameson v. State Farm Mut. Auto. Ins. Co.*,
871 F. Supp. 2d 862 (W.D. Mo. 2012) .......... 23, 24

*Kingen v. Warner Norcross + Judd LLP*,
2023 WL 11965363 (W.D. Mich. Oct. 5, 2023) .......... 17

*Kuhns v. Scottrade, Inc.*,
868 F.3d 711 (8th Cir. 2017) .......... passim

*Lazar v. Int'l Shoppes, LLC*,
2025 WL 1475627 (E.D.N.Y. May 22, 2025) .......... 16, 20

*Logan v. Marker Grp., Inc.*,
2024 WL 3489208 (S.D. Tex. July 18, 2024) .......... 8

*Lone Star Nat'l Bank v. Heartland Payment Sys., Inc.*,
729 F.3d 421 (5th Cir. 2013) .......... 11

*Lowman v. Enter. Fin. Grp., Inc.*,
2025 WL 2778380 (N.D. Tex. Sept. 30, 2025) .......... 13

*Maas v. Cornell Univ.*,
94 N.Y.2d 87 (1999) .......... 14

*Manning v. Pioneer Sav. Bank*,

56 Misc. 3d 797 (Sup. Ct. Rensselaer Cnty. 2016) .......... 7

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*,
419 F. Supp. 3d 668 (S.D.N.Y. 2019) .......... 20

*Moore v. Bearkat Energy Partners, LLC*,
2018 WL 683754 (Tex. App. Jan. 31, 2018) .......... 17

*Patel v. Holiday Hospitality Franchising, Inc.,*
172 F.Supp.2d 821 (N.D.Tex.2001) .......... 21

*Patterson v. McMickle*,
191 S.W.3d 819 (Tex. App. 2006) .......... 22

*Perras v. H & R Block*,
789 F.3d 914 (8th Cir. 2015) .......... 17

*Peters v. St. Joseph Servs. Corp.*,
74 F. Supp. 3d 847 (S.D. Tex. 2015) .......... 8

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985) .......... 3

*Ponce v. Wells Fargo Bank, N.A.*,
2019 WL 4345989 (W.D. Mo. Sept. 12, 2019) .......... 24

*Rainey v. Standard Guar. Ins. Co.*,
2020 WL 5536486 (W.D. Mo. Sept. 15, 2020) .......... 24

*Reyes v. Cap. One Fin. Corp.*,
2023 WL 2540567, (E.D.N.Y. Feb. 28, 2023) .......... 11

*Reyes v. Cap. One Fin. Corp.*,
2023 WL 2538922 (E.D.N.Y. Mar. 16, 2023) .......... 11

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023) .......... 12, 16, 20

*Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*,
454 Mich. 65 (1997) .......... 11

*Shakeri v. ADT Sec. Servs., Inc.*,
816 F.3d 283 (5th Cir. 2016) .......... 23

*Sharyland Water Supply Corp. v. City of Alton*,
354 S.W.3d 407 (Tex. 2011) .......... 11

*Shear Enters., LLC v. Cohen*,
189 A.D.3d 423, 137 N.Y.S.3d 306 (2020) .......... 16

*Shepherd v. Cancer & Hematology Centers of W. Michigan, P.C.*,
2023 WL 4056342 (W.D. Mich. Feb. 28, 2023) .......... 7

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
69 Misc. 3d 597 (Sup. Ct. Westchester Cnty. 2020) .......... 6, 12, 14, 19

*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,

781 F.3d 1003 (8th Cir. 2015) ........................................ 22

*Timberwalk Apartments, Partners, Inc. v. Cain*,
972 S.W.2d 749 (Tex. 1998) ........................................ 10, 11

*Toohey v. Portfolio Recovery Assocs., LLC*,
2016 WL 4473016 (S.D.N.Y. 2016) ........................................ 20

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
581 U.S. 433 (2017) ........................................ 18

*True v. Conagra Foods, Inc.*,
2011 WL 176037 (W.D. Mo. Jan. 4, 2011) ........................................ 4

*Vaden v. Discover Bank*,
556 U.S. 49 (2009) ........................................ 23

*Warren v. Halsted Fin. Servs., LLC*,
85 Misc. 3d 26 (App. Term 2d Dep't 2025) ........................................ 6

*Whaley v. Oracle Health Gov't Servs., Inc.*,
2026 WL 194815 (W.D. Mo. Jan. 26, 2026) ........................................ 4

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) ........................................ 23

*Zeni v. Anderson*,
397 Mich. 117 (1976) ........................................ 12

**Statutes**

Federal Trade Communications Act 15 U.S.C. § 45 ........................................ 12, 20
Mich. Comp. Laws § 445.72(14) ........................................ 10
Mo. Rev. Stat. § 407.1500.4 ........................................ 10
N.Y. Gen. Bus. Law § 349 ........................................ 19
N.Y. Gen. Bus. Law § 899-aa(6) ........................................ 10
Tex. Bus. Code § 17.46(b) ........................................ 21
Tex. Bus. & Com. Code §§ 521.053, 521.151 ........................................ 11, 22

**Constitutional Provisions**

U.S. Const. Art. III, § 2 ........................................ 5

## I. Introduction

This is a putative class action involving Plaintiffs from three different states alleging a data event involved a leak of information from Russell Cellular's computer systems onto the dark web. That is all Plaintiffs know for certain happened, because from there and across seventy pages of a Consolidated Compliant, Plaintiffs admit they do not know whether: (1) any of their data has been misused; (2) what caused the data event; (3) whether any actual security system in place was insufficient, and (4) have at most suffered an array of alleged harms that are not legally cognizable injuries. Therefore, Russell Celluar, Inc. ("Russell Cellular") now moves to dismiss all of the claims in the Consolidated Complaint. The reasons are straightforward, as are the reasons for granting this motion.

First, Plaintiffs have no Article III standing. Second, Plaintiffs state law claims lack allegations supporting fundamental elements of their tort and quasi-contractual claims against Russell Cellular. Third, Plaintiffs' state law deceptive trade practices fail to plead any actual fraud with any semblance of particularity and otherwise lack application. Fourth, Plaintiffs' federal declaratory judgment claim is not a standalone claim and there are no claims to support any declaratory or injunctive relief. Therefore, the Consolidated Complaint is ripe for dismissal in its entirety as against Russell Cellular.

## II. Factual Background and the Complaint

### A. The Parties

Plaintiff Jonathan Aguilar-Vazquez ("Aguilar-Vazquez") alleges he is a citizen and resident of Michigan, and that he purchased his phone and Verizon cellular plan in person there. (Dkt. 20, ¶ 23). Tina Burns ("Burns") alleges she is a resident and citizen of Texas, who similarly purchased two phones and other items, including Verizon service, in person. (*Id.*, ¶ 24.). Adessa Consulting, Inc. ("Adessa") is a corporation with a principal place of business in

New York, that purchased equipment and a Verizon cellular plan in New York. (*Id.*, ¶ 25.). Russell Cellular is an independent company that operates as an authorized Verizon retailer and sells wireless devices, service plans, and other products to facilitate customer transactions involving Verizon accounts, devices, and services. (*Id.,* ¶¶ 2, 34, 37, 40.).

### B. Plaintiffs Do Not Know if Their Non-Sensitive Data Was Misused or Whether Any Data Security Measures Were Actually Insufficient

Plaintiffs allege that data "entrusted to Russell Cellular" by "Verizon customers" as a "Verizon Authorized Retailer" was "compromised." (*Id.*, ¶ 38.). Plaintiffs allege a dark web posting that in March 2026, alerted them that a cybercriminal advertised certain data was available for sale on the dark web. (Dkt. 20, ¶¶ 9, fn. 4, 11.). According to the Complaint, "device identifiers" (a/k/a the Mobile Equipment Identity "IMEI"), telecom account data, and names, "access roles," invoice numbers, and wireless plan information, are alleged to have been stolen. (*Id*., ¶¶ 4, 10, 57-58.).

Plaintiffs admit there is a lot they do not know. Among other things, they do not know (a) when the intrusion happened, (b) how long it lasted, (c) what data was actually compromised, (d) how many people have been affected, (e) what any of the "specific vulnerabilities or security failures that permitted the intrusion" actually are (if any), (f) who was behind the intrusion, and (g) what remedial measures (if any) were necessary. (*Id*., ¶ 65.). Plaintiffs further admit they do not know "the root cause of the Data Breach" or "the precise manner in which Russell Cellular's systems were compromised" or, critically — "whether the accessed information was downloaded, exfiltrated, disseminated or otherwise misused by unauthorized parties." (*Id.,* ¶ 66.).

Plaintiffs describe how Verizon initiated its own investigation and sent notices starting in early April 2026. (*Id.,* ¶ 60-61; Exhibit A.). Verizon informed its customers that Russell Cellular was one of its vendors and had experienced a "security incident"— but there was "no evidence

that this data has been used in any way including to compromise Verizon accounts." (*Id.*). Verizon stated it was informed that certain information was "accessed" including "customer name, phone, number, the name of the price plan" and the IMEI identifier. (*Id.*). Plaintiffs Burns and Aguilar-Vasquez allege their name, phone number, the name of the price plan, and their IMEI "may" have been part of the alleged "Data Breach", (Dkt. 20, ¶¶ 92, 109.). Plaintiff Adessa makes no allegations about what, if any, of its data was specifically implicated or might have been accessed. (*Id.*, ¶ 102.). Plaintiffs allege injuries involving time spent reviewing the potential impact of the breach, monitoring accounts, considering identity-theft and credit-monitoring protections; including an "uptick" in spam calls or text messages, a diminution in value of their personal information, lost time, annoyance, inconvenience, interference, and lost opportunity costs, and finally, an "increased risk of fraud." (*Id.*, ¶¶ 20, 92, 95-96, 103-06, 112-13.).

### C. The Claims Against Russell Cellular and the Applicable States' Laws

Plaintiffs invoked the Class Action Fairness Act ("CAFA") with regard to the subject matter jurisdiction of the Court, and from there assert a total of eight (8) claims against Russell Cellular: Count 1 (Negligence), Count 2 (Negligence *Per Se*), Count 3 (Breach of Implied Contract), Count 5 (Unjust Enrichment), Count 6 (Violation of the Missouri Merchandising Practices Act (MMPA)), Count 7 (Violation of New York Gen. Bus. Law § 349), Count 8 (Violation of the Texas Deceptive Trade Practices Act (DTPA)), and Count 9 (Declaratory Relief under 28 U.S.C. §2201).

"The Supreme Court has held an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 822–23 (1985). See also *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 571 (2005) ("The CAFA confers federal diversity

jurisdiction over class actions where the aggregate amount in controversy exceeds $5 million"); *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010) ("CAFA is, at base, an extension of diversity jurisdiction"). As the Court is well aware, "[f]ederal district courts must apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity of citizenship." *Whaley v. Oracle Health Gov't Servs., Inc.*, No. 4:25-CV-00488-DGK, 2026 WL 194815, at *2 (W.D. Mo. Jan. 26, 2026) (citation omitted).

"For both tort and contract claims, Missouri courts apply the most-significant-relationship test as defined in the Restatement." *Dorman v. Emerson Elec. Co.,* 23 F.3d 1354, 1358 (8th Cir. 1994). Without any relevant exception that Russell Cellular could locate, courts applying the test in cases where products are alleged to have been purchased outside of Missouri, Missouri's state and federal courts have chosen the law of Plaintiffs' state (just as Plaintiffs have elected here). *See, e.g., Foulger v. Avertest, LLC*, No. 4:22-CV-00878, 2023 WL 12237244, at *3 (E.D. Mo. July 7, 2023) (applying Arizona, Massachusetts, and Michigan law to Plaintiffs' tort and contract claims as presumptive places of Plaintiffs' injuries); *True v. Conagra Foods, Inc.*, No. 07-00770-CV-W-DW, 2011 WL 176037, at *7 (W.D. Mo. Jan. 4, 2011) ("The vast majority of putative members purchased and/or consumed their pot pies outside of Missouri. Therefore, any injury would have occurred outside of Missouri, the parties' relationship would be centered where the purchase and consumption occurred. . . . ").

For the statutory claims under Texas' and New York's consumer protection laws (or state statutes other than Missouri's), the Eighth Circuit has also explained that "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005). Thus, collectively as plead, New York, Michigan and Texas Law apply to

Plaintiffs' claims against Russell Cellular because all Plaintiffs allege that they made their purchases at Russell Cellular locations in their respective home states and were allegedly injured where they reside. (Dkt. 20, ¶¶ 23-25, 127, 137-181, 214-228, 242-290.). Individually, New York Law applies to Adessa's claims, Michigan law applies to Aguilar-Vasquez' claims, and Texas law applies to Burns' claims against Russell Cellular.

## III. <u>Pleading Standards</u>

Article III limits federal jurisdiction to actual "Cases" and "Controversies," and standing is an essential component of that requirement. U.S. Const. Art. III, § 2; *In re SuperValu, Inc.*, 870 F.3d 763, 767–68 (8th Cir. 2017). To establish standing, a plaintiff must allege facts showing: (1) an injury in fact that is concrete and particularized; (2) a causal connection between the injury and the challenged conduct; and (3) redressability. *SuperValu, Inc.*, 870 F.3d at 768. The party invoking federal jurisdiction bears the burden of establishing these elements. (*Id.*).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Geivett v. AMC Mgmt., LLC*, 158 F.4th 900, 903 (8th Cir. 2025). "A gallimaufry of labels, conclusions, formulaic recitations, naked assertions and the like will not pass muster." *Colson v. Hennepin Cnty.*, 169 F.4th 773, 776 (8th Cir. 2026) (citation omitted). Allegations which are so internally inconsistent that they raise only a speculative inference of plausibility or are fatal to the claims asserted may be rejected, especially because courts are encouraged "to draw on judicial experience and common sense." *See In re Crop Inputs Antitrust Litig.*, 172 F.4th 570, 577 (8th Cir. 2026); *Fletcher v. Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP*, 537 F. Supp. 2d 1028, 1031–32 (W.D. Mo. 2008).

## IV. Argument

### A. All Plaintiffs Lack Article III Standing

At the threshold, there is no allegation in the Complaint of misuse of any data — indeed, the Complaint admits the opposite. (Dkt. 20, ¶ 66.). That makes every one of the alleged harms in the Complaint speculative, non-imminent, and of the types of alleged harms courts routinely dismiss under Article III's requirements and every applicable jurisdiction's law of damages. A sampling of the relevant authorities from each jurisdiction and courts around the Eight Circuit[1] makes this abundantly clear:

**New York**

Plaintiff Adessa alleges time spent monitoring accounts, mitigation efforts, an uptick in spam calls, diminution in the value of information, and increased risk of future fraud. (Dkt. 20, ¶¶ 103–108, 258–261.). Those allegations mirror injuries New York courts deem too conjectural to state a cognizable injury or to establish causation. See *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 69 Misc. 3d 597, 606–10 (Sup. Ct. Westchester Cnty. 2020) (alleged increased risk of identity theft was speculative and based on conjecture; *Warren v. Halsted Fin. Servs., LLC*, 85 Misc. 3d 26, 29–31 (App. Term 2d Dep't 2025) (consumer who alleged only that a debt collector exposed her to possible identity theft failed to allege facts showing injury-in-fact because she did not allege misuse). New York holds that a potential for future misuse and mitigation costs are too

[1] *See In re SuperValu, Inc.,* 870 F.3d 763, 770 (8th Cir. 2017) (Plaintiffs point to the allegations that, on information and belief, illicit websites are selling their Card Information to counterfeiters and fraudsters, and that plaintiffs' financial institutions are attempting to mitigate their risk. Not only are these allegations speculative, they also fail to allege any injury "to the plaintiff[s]." *Cf. In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 794 (D.N.J. 2025) ("The information these four Plaintiffs allege they provided Samsung—certain personal identifiers and contact information, device data, including IMEI number(s), and IP address—is not the type of information that historically has been recognized as sufficiently sensitive and subjecting them to an increased risk of identity fraud"); Accord *Devine v. Horizontal Integration, Inc.*, No. 24-CV-4555 (JMB/DLM), 2025 WL 3687972, at *6 (D. Minn. Dec. 19, 2025) ("Courts have found that "simply alleg[ing] that [an] [injury] happened *after* the ... breach" does not "sufficiently connect" the Data Breach to the injury.

conjectural, and a plaintiff cannot manufacture standing through self-help. *Greco v. Syracuse ASC, LLC*, 218 A.D.3d 1156-60 (4th Dep't 2023); *Manning v. Pioneer Sav. Bank*, 56 Misc. 3d 797 (Sup. Ct. Rensselaer Cnty. 2016) ("A speculative risk of identity theft, without actual fraudulent charges, is insufficient."); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017) (no standing where there were no allegations that Plaintiffs "paid a specific amount of money for data security").

**Michigan**

Plaintiff Aguilar Vasquez provides the same rote allegations of "harms" that Michigan courts likewise do not recognize as sufficient to confer standing in data breach litigation. (Dkt. 20, ¶20.). *But See, e.g.*, *In re Flagstar Dec. 2021 Data Sec. Incident Litig.*, No. 22-CV-11385, 2024 WL 5659583, at *11 (E.D. Mich. Sept. 30, 2024) (Michigan law has recognized that 'damages 'incurred in anticipation of possible future injury rather than in response to present injuries,' are not cognizable under Michigan law" for negligence or breach of contract) (citing *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 600 (2014)); *Doe v. Henry Ford Health System*, 308 Mich. App. 592 (2014) (costs of credit monitoring services were not cognizable under Michigan's negligence law because those economic losses were wholly derivative of a possible, future, speculative injury rather than an actual, present injury); *See also*, *Shepherd v. Cancer & Hematology Centers of W. Michigan, P.C.*, No. 1:22-CV-734, 2023 WL 4056342, at *6 (W.D. Mich. Feb. 28, 2023) ("Plaintiff's choice to spend time and money mitigating her risk of identity theft was a harm caused by Plaintiff herself. "But if the plaintiff caused his own injury, he cannot draw a connection between that injury and the defendant's challenged conduct. A self-inflicted injury, by definition, is not traceable to anyone but the plaintiff.")

Here, Aguilar-Vazquez alleges those exact derivative harms from the data event, which the attached notice says only "may" have involved the non-sensitive data identified. (Dkt. 20, ¶¶

92–99); *see Greenstein v. Noblr Reciprocal Exch.*, 2024 WL 3886977, at *2 (9th Cir. Aug. 21, 2024) ("may have been accessed" notice establishes only that a plaintiff's information "may (or may not)" have been taken); *In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 794 (D.N.J. 2025), *appeal filed* (3d Cir. May 12, 2025) (names, contact information, and IMEI device identifiers are "not the type of information that historically has been recognized as sufficiently sensitive" to create an increased risk of identity fraud").

**<u>Texas</u>**

Burns' allegations of increased spam, heightened risk of fraud or theft, and diminution of value also fail to confer standing, especially where she too admitted she has not had any data misused and does not know whether any data was misused. "[T]he receipt of phishing emails, while perhaps 'consistent with' data misuse, does not 'plausibly suggest' that any actual misuse of Plaintiff's personal identifying information has occurred." *Logan v. Marker Grp., Inc.*, No. 4:22-CV-00174, 2024 WL 3489208, at *5 (S.D. Tex. July 18, 2024) ("Courts in the Fifth Circuit have held that attempted credit card charges, phone solicitations, spam emails, and receipt of materials targeting one's specific medical conditions perpetrated "by *unknown third parties* ... fail[ ] to account for the sufficient break in causation caused by opportunistic third parties.") See *Id.* (emphasis in original). Indeed, "even when Social Security numbers were stolen as a result of a data breach, 'courts nonetheless have found that the mere risk of identity theft is insufficient to confer standing, even in cases where there were actual attempts to use the stolen information"). *See also Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 854 (S.D. Tex. 2015) ("The risk of future harm is, no doubt, indefinite. . . . Ultimately, Peters' theory of standing "relies on a highly attenuated chain of possibilities.").

### B. Count 1 Fails to State a Claim for Negligence Because of the Lack of an Independent Duty and the Economic Loss Rule

Every state requires that plaintiffs plead a cognizable duty and a breach of that duty. Plaintiffs, in the most vague and conclusory of terms, allege that the incident occurred and therefore Russell Cellular's security *must* have been inadequate. (Dkt. 20, ¶¶ 73–75.). But Plaintiffs admit they do not know the "root cause" and manner of compromise or whether any particular security vector was specifically "inadequate." (*See Id.*, ¶¶ 65–66.). These allegations are so internally inconsistent that the Court therefore need not accept as true any of Plaintiffs' inferences or allegations based "on information and belief. or allegations. See, e.g., *See In re Crop Inputs Antitrust Litig.*, 172 F.4th 570, 577 (8th Cir. 2026); *Fletcher v. Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP*, 537 F. Supp. 2d 1028, 1031–32 (W.D. Mo. 2008).

Likewise, Plaintiffs bald allegation of a "special relationship between Defendants, Plaintiffs, and Class Members…" is not enough. (Dkt. 20, ¶ 141.). *A fortiori* —an ordinary retail purchase is not the fiduciary or protective relationship the special-relationship doctrine requires, and Michigan recognizes there is no general duty to protect another from the criminal acts of a third party absent a special relationship. This is why federal courts applying Michigan law have rejected negligence claims premised on a failure to prevent a third-party cyberattack on precisely that ground. *Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*, 485 F. Supp. 3d 885, 894–900 (E.D. Mich. 2020) (no duty in an ordinary commercial relationship to prevent third-party criminal hacking; FTC Act supplies no such duty).

Here, Aguilar-Vazquez pleads nothing but an ordinary retail purchase, (Dkt. 20, ¶ 23.) The Complaint identifies no obligation existing independently of the alleged retail relationship and the same supposed security undertaking pleaded as an implied contract in Count 3, and where the asserted duty arises, if at all, from the parties' commercial dealings, no tort action lies.

*Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 467–70 (2004); *Grifo*, 485 F. Supp. 3d 885, 895 (E.D. Mich. 2020) ("A foundational rule in negligence law is that parties are not held liable for 'passive inaction or the failure to actively protect others from harm.'").

Adessa (a corporation that purchased devices and services) also pleads no special relationship, no assumed duty, and no non-economic injury. (Dkt. 20, ¶ 24.). More importantly, Adessa, unlike the individual Plaintiffs, alleges *no* notice letter and no fact plausibly placing any Adessa record in the affected data. Adessa even admits that it "cannot be certain" what was taken. (Dkt. 20, ¶¶ 102.). A causation chain that begins with a guess about whether the consumer's information was involved at all does not state a negligence claim under New York law.

Under Texas law, Plaintiff Burns alleges that because Defendants had the "exclusive ability [] to ensure that their systems, websites, and vendor services were sufficient to protect against the foreseeable risk that a data breach could occur." (Dkt. 20, ¶ 141.). However, a defendant's superior knowledge or control does not itself create a duty. Foreseeability of third-party crime is the *beginning* of the analysis, not a substitute for a recognized duty. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998).

Finally, Plaintiffs efforts to fold an obligation of "providing prompt and complete notice to affected individuals following a data-security incident" into a duty providing a private litigant a claim (Dkt. 20, ¶ 140.). Yet, no state involved recognizes a common-law duty of breach notification. Notification obligations are creatures of statute, and every relevant legislature vested their enforcement in public officials, not private plaintiffs: Mo. Rev. Stat. § 407.1500.4 (exclusive Attorney General enforcement); Mich. Comp. Laws § 445.72(14) (civil fines recoverable exclusively by the Attorney General); N.Y. Gen. Bus. Law § 899-aa(6) (exclusive

Attorney General enforcement via an action in the name of the people of the state); and Tex. Bus. & Com. Code §§ 521.053, 521.151 (Attorney General). A negligence count cannot create the private notification action four legislatures withheld.

Similarly, New York bars negligence recovery for purely economic loss absent a duty independent of the parties' commercial relationship. *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 288–90 (2001); *Davies v. S.A. Dunn & Co.*, 200 A.D.3d 8, 15–16 (3d Dep't 2021) (no negligence recovery for purely economic loss absent personal injury or property damage), *lv. denied*, 38 N.Y.3d 902 (2022); *Reyes v. Cap. One Fin. Corp.*, 2023 WL 2540567, at *6 (E.D.N.Y. Feb. 28, 2023), *report and recommendation adopted*, 2023 WL 2538922 (E.D.N.Y. Mar. 16, 2023). Texas law is the same. *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998); *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415–18 (Tex. 2011). *See Lone Star Nat'l Bank v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 423 (5th Cir. 2013) (the parties "agreed the economic loss doctrine under Texas law would bar the Issuer Banks' negligence claim"). Michigan law accords. *See Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 454 Mich. 65, 83–84 (1997) (holding no tort claim where the alleged duty arises solely from alleged contract); *Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 467–68 (2004) (requiring separate duty that is distinct from any contractual obligations).

Furthermore, Plaintiffs' delayed-notification theory adds no legally sufficient information. Verizon began notifying affected individuals on or around April 10, 2026, roughly three and one-half weeks after it allegedly learned of the incident, (Dkt. 20, ¶ 61), and Aguilar-Vazquez and Burns (the only Plaintiffs who allege to receiving notice) plead no misuse during that interval, no protective step an earlier notice would have enabled, and no injury caused by the

timing rather than by the incident itself. After Verizon's notice, Russell Cellular's alleged failure to send a second, duplicative notice, (*Id.*, ¶ 60), caused no separately pleaded injury. Adessa alleges neither notice nor any determination that its information was affected. (*Id.,* ¶¶ 101–08.).

### C. Count 2 Falis to State a Claim for Negligence *Per Se* Because It is Not a Standalone Claim and There is No Mechanism To Make it One

Count II relies on Section 5 of the Federal Trade Communications Act 15 U.S.C. § 45 ("FTCA" and "Section 5"), and unspecified "analogous state consumer-protection statutes" to support this claim. (Dkt. 20, ¶¶ 154–159). Neither aid Plaintiffs in stating a claim.

"The FTCA creates no private right of action." *In re SuperValu, Inc.*, 925 F.3d 955, 963 (8th Cir. 2019); *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015). Thus, "[i]mplying a cause of action would be inconsistent with Congress's anticipated enforcement scheme." *Id* at 964. *See also Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974) ("[T]he Federal Trade Commission Act may be enforced only by the Federal Trade Commission. Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions") (citations omitted). Thus, Plaintiffs are left with only the laws of their respective states for support, but none of them allow for this claim to stand.

Michigan does not recognize negligence *per* se as a standalone claim. *Zeni v. Anderson*, 397 Mich. 117, 128–43 (1976); *Candelaria v. B.C. Gen. Contractors, Inc.*, 236 Mich. App. 67, 82 (1999); *Grifo*, 485 F. Supp. 3d at 896–900. New York does not permit negligence per se to convert a nonactionable statutory standard into a private tort. *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 509 (S.D.N.Y. 2023) (allowing such a claim would improperly create a private right the statute does not recognize); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 69 Misc. 3d 597, 608 (Sup. Ct. 2020) (same); *FritzCo LLC v. Verizon Commc'ns Inc.*, 2026 WL 734776, at *7 (S.D.N.Y. Mar. 16, 2026) (dismissing negligence per se claim predicated on the

FTCA because "Section 5 does not provide for a private right of action" [citations omitted]). And Texas confines negligence *per se* to penal-type statutes that supply a specific, judicially adoptable standard of conduct or private right of action and has the FTCA's open-ended prohibition of "unfair" practices has neither. *See Lowman v. Enter. Fin. Grp., Inc.*, No. 3:24-CV-02752-L, 2025 WL 2778380, at *3 (N.D. Tex. Sept. 30, 2025) ("Without a private right of action, neither [the FTCA nor Texas Identity Enforcement Act] can be used to support a negligence *per se* claim").

### D. Count 3 Fails to State a Claim for Breach of Implied Contract Because The Complaint Pleads No Mutual Assent, No Terms, and No Damages

Plaintiffs allege that "[b]y accepting" Plaintiffs' information incident to retail purchases, Russell Cellular "entered into implied contracts" under which it "explicitly stated and agreed" to extensive security, confidentiality, use, retention, and notification obligations. (Dkt. 20, ¶¶ 166–68.). This conclusory allegation does not identify any contracting event, any explicit statement communicated to any named Plaintiff as a contract term, or any conduct manifesting assent to those specific obligations. *See Kuhns v. Scottrade, Inc.,* 868 F.3d 711, 718 (8th Cir. 2017) (affirming dismissal of breach of contract claim because the mere occurrence of a data breach does not plausibly allege that the defendant failed to provide the bargained-for security). Here, there is a fundamental mismatch between the alleged transactions at issue and the alleged "promises", which highlights this point.

Plaintiffs allege they purchased their goods in brick-and-mortar stores, yet every Russell Cellular security representation the Complaint quotes appears to be taken from the company's online privacy policy, and no Plaintiff alleges he, she or it ever read the policy before completing their respective transactions. (Dkt. 20, ¶¶ 23–25.). The website-scanning and SSL statements quoted in the Complaint are expressly directed to online activity and although the Complaint also

quotes general safeguard language, *no* Plaintiff alleges seeing that language, receiving it during an in-store transaction, or incorporating it into any receipt or purchase document. (Dkt. 20, ¶¶ 46–48 & nn.12–14.). A policy no Plaintiff is alleged to have encountered cannot supply the assent an implied-in-fact contract requires.

Furthermore, Courts will not imply an absolute promise that customer data will *never* be compromised. Indeed, the Eighth Circuit in *Kuhns* dismissed an identical implied-contract claim, premised on an alleged unspoken promise to maintain reasonable safeguards, because the complaint left the court to guess exactly how the defendant's security measures failed. (*Id*., at 717–18.) Paragraphs 65–66 and 73–75 of the Complaint suffer from that exact pleading defect as in *Kuhns*. (*Id*.). ("Kuhns does not allege that Scottrade affirmatively promised that its customer data would not be hacked, and such a promise may not be plausibly implied.").

And every State's law at issue here adheres to the same hornbook law: an implied-in-fact contract requires the same mutual assent and consideration as an express one, manifested by conduct. In Michigan, no contract term can be implied absent circumstances showing a mutual intent to contract on the subject, and courts applying Michigan law have dismissed data-security contract claims where no term addressed the challenged conduct. *Grifo*, 485 F. Supp. 3d at 891–94. In New York, a plaintiff must plead conduct manifesting agreement on the specific obligation asserted; providing information incident to a purchase does not, without additional facts, manifest assent to the particular security, use, retention, and notice terms alleged. *See Maas v. Cornell Univ*., 94 N.Y.2d 87, 93–94 (1999) (holding that an implied-in-fact contract requires a baseline manifestation of mutual assent and a meeting of the minds on specific obligations); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc*., 69 Misc. 3d 597, 607 (Sup. Ct. 2020)

(dismissing implied contract claim because providing personal information during a business transaction does not establish a mutual intent to contract for specific data security protocols).

In Texas, the elements are identical. *See Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972) (holding that an implied-in-fact contract requires the exact same meeting of the minds and mutual assent as an express contract) *see also In re Zappos.com, Inc.*, No. 3:12-cv-00325, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (dismissing data-breach implied contract claims under Texas law because a retailer's unilateral data-security policies and the routine exchange of customer information do not manifest mutual assent or create binding contractual obligations). In the Complaint, these same principles hold, and Plaintiffs failed to plead anything that makes any contract.

Finally, Plaintiffs fail to plead any non-speculative measure of contract damages. They identify no security surcharge, no allocated portion of the purchase price, no represented and actual market values, no purchased mitigation service, and no realized loss from misuse. In other words, there are no allegations for calculating expectation or benefit-of-the-bargain damages. *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1071–72 (C.D. Ill. 2016) (customers paid for products, not "a side order of data security"). And allegations of worry, inconvenience, and the fact of a breach do not plead contract damages, *Kuhns*, 868 F.3d at 717–18 ("Massive class action litigation should be based on more than allegations of worry and inconvenience."); *accord Carlsen v. GameStop, Inc.*, 833 F.3d 903, 911–12 (8th Cir. 2016); *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 602–04 (2014) (monitoring costs are speculative because they "depend[] entirely on the occurrence of multiple contingencies.") Here even the predicate for possible damage is left unpled. While the notice Plaintiffs attach to the Complaint states only that Plaintiffs' information "may" have been involved (Dkt. 20, ¶¶ 92, 109 & Ex. A)

the Complaint does not allege whether any information was exfiltrated or misused at all. (*Id.* ¶ 66.). Accordingly, Count III should be dismissed.

### E. Count 5 Does Not State a Claim for Unjust Enrichment Because It is not a Catchall Claim for Relief

New York law forecloses Plaintiff Adessa's claims because unjust enrichment "is not a catchall cause of action" and must be dismissed where it duplicates the same alleged conduct and injury as conventional contract or tort theories. *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790–91 (2012) (unjust enrichment lies only in unusual cases where no contract or recognized tort supplies relief). New York's courts have routinely followed this rule to dismiss duplicative claims for "unjust enrichment" as alternatives. *See, e.g.*, *Shear Enters., LLC v. Cohen*, 189 A.D.3d 423, 424–25, 137 N.Y.S.3d 306, 309 (2020) (dismissing duplicative unjust enrichment claim that rested on same allegations as contractual claim); *Lazar v. Int'l Shoppes, LLC*, No. CV 24-4170 (GRB) (SIL), 2025 WL 1475627, at *4 (E.D.N.Y. May 22, 2025) (dismissing unjust enrichment claim in data breach litigation because "an unjust enrichment claim 's not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)); *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 502-03 (S.D.N.Y. 2023) (dismissing unjust-enrichment claim based on alleged underinvestment in data security as duplicative).

Under Michigan law, Aguilar-Vasquez' claim fails because ""the mere fact that a benefit has been conveyed does not necessarily indicate that it is unjust for the party to retain that benefit." *Delta Airlines, Inc. v. Spirit Airlines, Inc.*, No. 224410, 2004 WL 67685, at *3 (Mich. Ct. App. Jan. 15, 2004). Courts applying this rule have dismissed unjust enrichment claims because "Plaintiffs' mere assertion that 'Defendant received profits, benefits, and compensation' at the expense of Plaintiffs' is conclusory. Other courts have found that it was the third-party hackers—

not the defendants—that benefited from a data breach" and thus, "the Court is permitted to disregard conclusory allegations at this stage. Plaintiffs did not "raise a right to relief above the speculative level." *Kingen v. Warner Norcross + Judd LLP*, No. 1:22-CV-01126, 2023 WL 11965363, at *5 (W.D. Mich. Oct. 5, 2023) (collecting cases).

Burns' fails to state a claim under Texas law because "whether a plaintiff has a meritorious claim for breach of contract does not govern whether that remedy precludes a claim for unjust enrichment; rather, the mere existence of [a] potential contract claim bars the unjust enrichment remedy." *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 854–55 (S.D. Tex. 2018). Indeed, in applying Texas law "[s]everal courts have held that unjust enrichment is not a separate and a distinct cause of action." *Chapman v. Commonwealth Land Title Ins. Co.*, 814 F. Supp. 2d 716, 725 (N.D. Tex. 2011) (citations omitted) (dismissing claim and stating, "Texas courts of appeals have consistently held that unjust enrichment is not an independent cause of action, but instead a theory upon which an action for restitution may rest."). *See also* *Moore v. Bearkat Energy Partners, LLC*, No. 10-17-00001-CV, 2018 WL 683754, at *5, n.3 (Tex. App. Jan. 31, 2018) ("unjust enrichment is not a separate cause of action"); *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App. 2009) ("Unjust enrichment, is not an independent cause of action. . . .").

**F. Count 6 Fails to State a Claim under the MMPA**

None of the Plaintiffs made purchases in Missouri and there is no "Missouri Subclass" identified in the Complaint. This is fatal to this claim because the Eight Circuit has squarely concluded that the MMPA does not cover out of state transactions by consumers located in states other than Missouri. *See Perras v. H & R Block*, 789 F.3d 914, 918 (8th Cir. 2015) (reasoning that "the Supreme Court of Missouri would conclude that the MMPA does not cover the out-of-state transactions in this case. The law applicable to each class member would be the consumer-protection statute of that member's state"); *Hale v. Emerson Elec. Co.*, 942 F.3d 401, 403 (8th

Cir. 2019) ("We have explained [in *Perras*]that although the MMPA covers every kind of unfair practice, a plaintiff's claim nevertheless must involve commerce "in or from the state of Missouri"). *See also  Barker v. Nestle Purina PetCare Co.*, 601 F. Supp. 3d 464, 469–70 (E.D. Mo. 2022) (following Hale and Perras in dismissing MMPA case because "every part of the challenged transaction[s] took place" outside Missouri. [ ] Plaintiff has not demonstrated how the facts she alleged in this case differ from those in *Hale* in any way that warrants a different result"). Because "standing is not dispensed in gross" and  "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought," for want of a Missouri plaintiff, this claim fails to state a claim. *See Town of Chester, N.Y. v. Laroe Ests., Inc*., 581 U.S. 433, 439 (2017).

Additionally, even if there was a Missouri plaintiff, the Complaint fails to plead any of the allegedly fraudulent and deceptive conduct with the particularity required by courts otherwise addressing the allegations under Rule 9(b). *See, e.g., Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017) (dismissing MMPA claim and stating "the allegation that Scottrade engaged in 'fraudulent and deceptive acts' is a claim that sounds in fraud that was not pleaded with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure"); *Craggs v. Fast Lane Car Wash & Lube, L.L.C.*, 402 F. Supp. 3d 605, 611 (W.D. Mo. 2019) ("numerous district judges in Missouri have held that Rule 9(b) applies to MMPA claims, particularly those that (as was the case in *Kuhns* and is the case here) are fraud-like in that they are based on misrepresentations and omissions"). None of the particularities required by this District and the Eighth Circuit are in the Complaint, so this claim is subject to dismissal.

### G. Count 7 Fails to State a Claim under New York Gen. Bus. Law § 349 Because there is No Misuse of Data, No Deceptive Conduct and No Injury

Plaintiff Adessa has failed to allege any misuse of any data and asserts generally that the Defendants did not have adequate security, and "misreprent[ed]" their security capabilities in certain Privacy Policy documents, and acted deceptively. (*See* Dkt. 20, ¶¶5, 46-48, 242-68.). However, to state a claim under New York General Business Law § 349, a plaintiff must allege (1) consumer-oriented conduct, (2) that the act or practice was materially misleading, and (3) that the plaintiff suffered injury "by reason of" the deception. N.Y. Gen. Bus. Law § 349. In this case, Plaintiff Adessa fails to state a claim for at least two distinct reasons.[2]

First, Plaintiff fails the second prong of the test because New York recognizes that " the statements allegedly made by defendants in the privacy policy and online notices do not constitute an unlimited guaranty that patient information could not be stolen or that computerized data could not be hacked." *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 49 Misc. 3d 1027, 1039, 19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015). In *Abdale*, the court explained that "despite the broad language contained in the complaint" an alleged failure to safeguard plaintiffs' protected health information and identifying information from theft did not mislead the plaintiffs in any material way and does not constitute a deceptive practice within the meaning of the statute." *See Id. See also Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 69 Misc. 3d 597, 609, 131 N.Y.S.3d 817, 827–28 (N.Y. Sup. Ct. 2020) "[T]he statements allegedly made [ ] in the privacy notice ... do not constitute an unlimited guaranty that patient information could not be stolen [from a business associate] or that computer data could not be hacked" on the network of a business associate"). New York's federal courts follow the same logic. *See also Lazar v. Int'l Shoppes, LLC,* No. CV

[2] Russell Cellular does not concede Plaintiff Adessa or the putative subclass it seeks to represent have met other requirements for stating a claim. Rather, for brevity, Russell Cellular is addressing the most fundamental flaws that are sufficient to warrant dismissal of this claim.

24-4170 (GRB) (SIL), 2025 WL 1475627, at *5 (E.D.N.Y. May 22, 2025) ("Plaintiffs point to defendants' privacy policy in which they tout their 'strict security measures' and promise to 'do [their] best to protect [plaintiffs' and class members'] personal information.' However, this statement 'cannot be read to provide an assurance that there would be no circumstances under which [defendants' data] security systems would fail or that [their] accounts would be invulnerable to third-party attacks." (quoted sources omitted) [3]

Second, Plaintiffs fail the last prong because they suffered no injury from the otherwise non-deceptive statements. Under New York law, "[A] plaintiff must prove 'actual' injury to recover under the statute, and the "actual injury" requirement is "something more that the 'injury-in-fact' required to establish constitutional standing." *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 706 (S.D.N.Y. 2019) (citing *Toohey v. Portfolio Recovery Assocs., LLC*, 2016 WL 4473016, at *10 n.17 (S.D.N.Y. 2016). Here, as shown at length above, Adessa does not have Article III standing, let alone the "actual injury" or "something more" than Article III standing that New York courts require. This Count has no plausible basis to survive.

### H. Count 8 Fails to State a Claim under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA")

Only Plaintiff Burns alleges she is resident and citizen of Texas, and "[i]t is well-established that '[c]laims alleging violations of the DTPA are subject to the requirements of Rule

[3] To the extent this claim also relies heavily on the alleged duties under the FTC Act, 15 U.S.C. § 45, which New York courts have repeatedly determined is not sufficient to prop up a NY. Gen. Bus. Code § 349 claim and cannot serve as an indirect enforcement mechanism for the absence of a private right of action in the FTC Act. *See, e.g., Alfred Dunhill Ltd. v. Interstate Cigar Co*., 499 F.2d 232, 237 (2d Cir. 1974) ("The provisions of the Federal Trade Commission Act may be enforced only by the Federal Trade Commission. Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions"); *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 500 (S.D.N.Y. 2023) ("A plaintiff cannot circumvent the lack of a private right of action for violation of a New York state law by pleading his claim under GBL § 349").

9(b).'" *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (dismissing claim and citing *Patel v. Holiday Hospitality Franchising, Inc.,* 172 F.Supp.2d 821, 824–25 (N.D.Tex.2001) (and cases cited therein). Here again, the Complaint's allegations fail to meet the requirements of Rule 9(b). In *Berry*, the court dismissed the DPTA claim for being insufficiently plead under Rule 9(b) because it found the DPTA was predicated on the same allegations as the negligence claim, and therefore *did not* meet Rule 9's heightened requirement to explain the "who, what, when, where, and how of the alleged fraud." *Id.,* 608 F. Supp.2d at 800. Similarly, in *Patel*, the court determined the DPTA claim was not plead with sufficient particularity because it relied on the same conclusory allegations that the Defendant had made a "promise" that it had not honored, which was not enough to state a claim for fraud. *See Patel*, 172 F.Supp.2d at 825.[4]

Here, the Complaint alleges only that, grouped together, "Defendants represented that they maintained reasonable administrative, technical, and physical safeguards", but alleged in "false, misleading, or deceptive acts and practices", which they identify in a formulaic laundry list of rote allegations of the statutory language of Tex. Bus. Code § 17.46(b). (*See* Dkt. 20, ¶¶ 270-72). *But see GCC Rio Grande, Inc. v. Paso Del Norte Ready-Mix, Inc.*, No. EP-14-CA-00100-FM, 2014 WL 12863360, at *6 (W.D. Tex. June 26, 2014) (dismissing counterclaim and stating "Ready-Mix has not sufficiently pleaded its DTPA claim with particularity. Instead, Ready-Mix asserts GCC committed "at least one or more" of the provisions enumerated in the

---

[4] The DTPA requires a plaintiff to provide a defendant with written notice of any DTPA claim at least sixty days prior to filing suit. TEX. BUS. & COM. CODEE § 17.505(a). Therefore, defendants are entitled to have this action held in abeyance until plaintiffs comply with the DTPA's notice requirements. *Patel v. Holiday Hosp. Franchising, Inc.,* 172 F. Supp. 2d 821, 826 (N.D. Tex. 2001) The Complaint alleges notice was provided on June 11, 2026, (Dkt. 20, ¶ 287),[4] but this action was filed the very next day, on June 12, 2026—far short of the statutory waiting period.

DTPA's — and its associated statutes' — laundry list of unlawful acts or practices. The court is unable to ascertain, at a minimum, *which* provision of the act GCC allegedly violated, as Ready-Mix has failed to specify any facts that would demonstrate a violation of the DTPA"). *Accord Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud").[5]

Additionally, Plaintiffs allegations that the Defendants fraudulently failed to disclose "that their data systems were not secure" (Dkt. 20, ¶ 279-80) are insufficient to sustain a DPTA claim because "[t]o be actionable under the DTPA, 'a failure to disclose material information necessarily requires that the defendant have known the information and have failed to bring it to the plaintiff's attention." *Collins v. San Antonio Dodge Chrysler Jeep Ram*, No. 5:25-CV-00993-JKP, 2025 WL 3143640, at *5 (W.D. Tex. Nov. 10, 2025) (dismissing claim for lack of particularity). A DTPA omission claim requires facts showing the defendant knew the undisclosed information and withheld it with intent to induce the transaction. *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App. 2006). Here, Burns pleads only the conclusion that Defendants "knew" of unspecified deficiencies (Dkt. 20, ¶ 275.). However, she alleges no fact

[5] To the extent Count VIII invokes Tex. Bus. & Com. Code § 521.052 (Dkt. 20, ¶ 273). That provision applies only to "sensitive personal information" as defined in § 521.002; *i.e.*, a name combined with a SSN, government-issued identification number, or financial-account number and access credentials, or specified health information. The only Burns-specific fields identified are her name, phone number, plan name, and IMEI. (Dkt. 20, ¶ 109.). Those information bites do not constitute statutorily defined sensitive personal information, so § 521.052 is not plausibly alleged to have applied to her data at all. Plus, an alleged § 521.052 violation cannot be converted into a private DTPA claim. § 521.152 designates only a violation of § 521.051 – the unauthorized obtaining, possession, transfer, or use of identifying information with intent to obtain something of value in another's name – as a deceptive trade practice, and the Complaint alleges no such conduct or intent by Russell Cellular, and the remainder of Chapter 521 is enforceable only by the Attorney General of Texas. See § 521.151.

about what Russell Cellular knew before her purchase, and does not allege she would have foregone the purchase had more information been disclosed.

Thus, "to plead a DTPA claim based on unconscionable conduct, there must be more than an allegation of a breach of warranty or contract or false advertising." *Hernandez v. Safariland, LLC*, 824 F. Supp. 3d 581, 597 (W.D. Tex. 2026) (dismissing DPTA claim finding claim that product was not as safe as allegedly promised was "merely a repackaged false advertising/marketing defect or breach of warranty claim."). *See also Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016) (affirming dismissal of DTPA claim based on unconscionability where plaintiff alleged no more than a repackaged claim for breach of contract); *Bedgood v. Nissan N. Am., Inc.*, No. A-16-CA-00281-SS, 2016 WL 3566689, at *4 (W.D. Tex. June 24, 2016) (dismissing DTPA claim that was based on nothing more than allegation that defendant had breached its contract by falsely advertising its alarm system would work when, in fact, it did not work as promised under the contract).

Here, like the plaintiffs in *Franklin*, *Shakeri*, *Hernandez*, *Collins*, *Patterson*, *GCC Rio Grande, Berry,* and *Patel*, Burns has satisfied none of the plausibility requirements for pleading a DTPA claim. Consequently, this claim should also be dismissed.

**I. Count 9 Fails to State a Claim for Declaratory and Injunctive Relief**

The Declaratory Judgment Act "is procedural only" and "confers a discretion on the courts rather than an absolute right upon the litigant." *Vaden v. Discover Bank*, 556 U.S. 49, 70, n.19 (2009); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). While that discretion is both "unique and substantial" when deciding whether to entertain an action under the Declaratory Judgment Act, *Jameson v. State Farm Mut. Auto. Ins. Co.,* 871 F. Supp. 2d 862 (W.D. Mo. 2012), "a petition seeking declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more

than a petition claiming breach of contract." *Id.* at 870-71 (dismissing claim for declaratory judgment); *See also Rainey v. Standard Guar. Ins. Co.*, No. 20-CV-03112-SRB, 2020 WL 5536486, at *4 (W.D. Mo. Sept. 15, 2020) (if a suit for breach of contract is an adequate remedy at law, a request for declaratory judgment seeking the same relief is duplicative).

Here, the Complaint first requests backward-looking declarations that certain duties were owed and breached (Dkt. 20, ¶ 296(a)-(d)) and forward looking "prospective" injunctive relief mandating certain conduct (Dkt. 20, ¶ 296(e)-(j)), which runs afoul of several decisions of this Court and the Eight Circuit. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017) (affirming dismissal of a data-breach declaratory claim that focused on past conduct rather than a dispute fit for immediate declaratory resolution). *Ponce v. Wells Fargo Bank, N.A.*, No. 6:19-03152-CV-RK, 2019 WL 4345989, at *3 (W.D. Mo. Sept. 12, 2019) ("Even though the Complaint characterizes the request for a declaratory judgment as a separate cause of action, it is not. It is a remedy for the alleged breach of contract pled in Count II"); *Allied Servs., LLC v. Smash My Trash, LLC*, No. 21-CV-00249-SRB, 2024 WL 2842633, at *41 (W.D. Mo. May 16, 2024), aff'd, 153 F.4th 600 (8th Cir. 2025) ("[a] declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events"); *Cf. Devine v. Horizontal Integration, Inc.*, No. 24-CV-4555 (JMB/DLM), 2025 WL 3687972, at *3 (D. Minn. Dec. 19, 2025) "[t]he universal interest in the security of one's private data does not equate to a substantial and imminent risk of harm. . . . If that risk were deemed sufficiently imminent to justify injunctive relief, virtually every company and government agency might be exposed to requests for injunctive relief like the one the plaintiffs seek here.").

## V. <u>CONCLUSION</u>

Russell Cellular respectfully requests the Court grant this motion and dismiss all of the claims in the Consolidated Complaint.

Dated July 13, 2026


**CONSTANGY, BROOKS, SMITH & PROPHETE LLP**

*/s/ David A. Yudelson*
David A. Yudelson*
2029 Century Park East, Suite 1100
Los Angeles, CA 90067
Tel: (310) 256-3074
dyudelson@constangy.com

Kimberly F. Seten (MO #50449)
1201 Walnut Street, Ste. 2350
Kansas City, MO 64106
Tel: (816) 472-6400
kseten@constangy.com

*Counsel for Defendant Russell Cellular, Inc.*

*admitted pro hac vice

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 13, 2026, the foregoing was filed electronically with the Clerk of Court using the CM/ECF System and was thereby served on all counsel of record.

*/s/ David A. Yudelson*
David A. Yudelson