# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JONATHAN AGUILAR-VAZQUEZ, ADESSA CONSULTING, INC. and TINA BURNS, Individually and on behalf of all those similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) | Case No.: 6:26-cv-03218-MBB |
| v. | ) ) | |
| RUSSELL CELLULAR, INC., and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | ) ) ) ) | |
| Defendants. | ) ) | |

**<u>DEFENDANT CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS'S
SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

I. Introduction ........................................................................................................... 1

II. Factual Background .............................................................................................. 2

    A. The Alleged Data Breach ............................................................................ 2

    B. Plaintiffs' Alleged Injuries and Claims .................................................... 3

III. Legal Standard ...................................................................................................... 3

    A. Rule 12(b)(1) and Article III Standing...................................................... 3

    B. Rule 12(b)(6) and Failure to State a Cause of Action ............................. 4

IV. Argument ............................................................................................................... 4

    A. Plaintiffs Lack Article III Standing........................................................... 4

    B. Plaintiffs Fail to State a Claim Upon Which Relief Can be Granted..................... 9

        1. The Negligence Claim is Barred by the Economic Loss and Separate-and-Distinct Duty Rule ............................................................. 10

        2. Plaintiffs' Negligence *Per Se* Claim Fails Because it is Based on Alleged Violations of the FTC Act, which Provides no Private Right of Action ....................................................................................... 14

        3. The Breach-of-Express-Contract Claim Fails Because Plaintiffs Identify No Specific Contractual Provision Verizon Breached ................. 15

        4. The Unjust-Enrichment Claim Fails Because It Repackages Plaintiffs' Other Theories and Seeks Quasi-Contract Relief Despite Governing Contracts ................................................................................................. 16

        5. Plaintiff Adessa and the New York Subclass Fail to State a Claim for Violation of New York's General Business Law Section 349............. 18

        6. Plaintiff Burns and the Texas Subclass Fail to State a Claim for Violation of the Texas Deceptive Trade Practices-Consumer Protection Act......................................................................................... 20

        7. The Claim for Declaratory and Injunctive Relief Must be Dismissed Because it is Duplicative and Devoid of Plausible Allegations of Redressable Harm ................................................................................. 23

        8. Plaintiffs Agreed to a Limitation of Liability Provision that Bars the Relief They Seek .......................................................................... 24

V. Conclusion .......................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                      **Page(s)**

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
    49 Misc. 3d 1027, 19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015) ................................................15, 19

*Acrisure, LLC v. Hudak*,
    618 F. Supp. 3d 642 (W.D. Mich. 2022) ........................................................................17, 18

*Acuity v. N. Cent. Video, LLLP*,
    468 F. Supp. 2d 1071 (D.N.D. 2006) ....................................................................................23

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*,
    499 F.2d 232 (2d Cir. 1974)............................................................................................14, 20

*Allstate Vehicle & Prop. Ins. Co. v. Adams*,
    No. 3:15-CV-05121-BCW, 2016 WL 10637112 (W.D. Mo. Mar. 8, 2016) ..........................23

*Amburgy v. Express Scripts, Inc.*,
    671 F. Supp. 2d 1046 (E.D. Mo. 2009)..................................................................................24

*Antman v. Uber Techs., Inc.*,
    No. 3:15-cv-01175, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ...........................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................4, 12, 13

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) ....................................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................4

*Berry v. Indianapolis Life Ins. Co.*,
    608 F. Supp. 2d 785 (N.D. Tex. 2009) ...................................................................................20

*Bishop v. Comm. on Pro. Ethics & Conduct of Iowa State Bar Ass'n*,
    686 F.2d 1278 (8th Cir. 1982) ................................................................................................10

*In re Brinker Data Incident Litig.*,
    No. 3:18-cv-686, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ...............................................25

*Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*,
    313 F.3d 899 (5th Cir. 2002) ..................................................................................................21

*Camm v. Reach Fin, LLC*,
    No. 25 Civ. 1921., 2026 WL 861670 (S.D.N.Y. Mar. 30, 2026) .....................................18, 19

Case 6:26-cv-03218-MBB    Document 35    Filed 07/13/26    Page 3 of 33

*Candelaria v. B.C. Gen. Contractors, Inc.*,
  236 Mich. App. 67, 600 N.W.2d 348 (1999)........................................................................14

*Castorino v. Citibank, N.A.*,
  No. 07 Civ. 10606, 2008 WL 5114482 (S.D.N.Y. Dec. 5, 2008)...........................................16

*Cherny v. Emigrant Bank*,
  604 F. Supp. 2d 605 (S.D.N.Y. 2009)..................................................................................6

*Cincinnati Indem. Co. v. A & K Constr. Co.*,
  542 F.3d 623 (8th Cir. 2008) ............................................................................................24

*City of New York* v. *Smokes-Spirits.Com, Inc.*,
  12 N.Y.3d 616 (2009) .......................................................................................................18

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)........................................................................................................7, 9

*Coppola v. Smith*,
  935 F. Supp. 2d 993 (E.D. Cal. 2013).................................................................................14

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) ..................................................................................................17, 18

*Davies v. S.A. Dunn & Co., LLC*,
  200 A.D.3d 8, 156 N.Y.S.3d 457 (2021) .............................................................................11

*Devine v. Horizontal Integration, Inc.*,
  No. 24-CV-4555, 2025 WL 3687972 (D. Minn. Dec. 19, 2025)........................................6, 24

*Doe v. Chao*,
  540 U.S. 614 (2004)..........................................................................................................10

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
  No. 3:16-cv-00014, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016).........................................11

*Duqum v. Scottrade, Inc.*,
  No. 4:15-CV-1537, 2016 WL 3683001 (E.D. Mo. July 12, 2016)..........................................6

*Electron Trading, LLC v. Morgan Stanley & Co. LLC*,
  No. 4:23-cv-00186, 157 A.D.3d 579, 69 N.Y.S.3d 633 (2018)..............................................25

*In re ESO Sols., Inc. Breach Litig.*,
  No. 1:23-CV-1557, 2024 WL 4456703 (W.D. Tex. July 30, 2024).......................................19

*Fed. Trade Comm'n v. Owens-Corning Fiberglas Corp.*,
  853 F.2d 458 (6th Cir. 1988) ............................................................................................14

iv

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ................................................................8, 20

*Franklin v. Apple Inc.*,
569 F. Supp. 3d 465 (E.D. Tex. 2021) ..................................................................21, 22

*FritzCo LLC v. Verizon Commc'ns Inc.*,
No. 21-CV-10432, 2026 WL 734776 (S.D.N.Y. Mar. 16, 2026) .............................14

*Fultz v. Union-Commerce Assocs.*,
470 Mich. 460, 683 N.W.2d 587 (2004) ..................................................................12

*Gardiner v. Walmart Inc.*,
No. 20-cv-04618, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ................................8

*Gerber v. Twitter*,
No. 4:23-cv00186, 2024 WL 1354449 (N.D. Cal. Mar. 29, 2024)..........................25

*Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*,
485 F. Supp. 3d 885 (E.D. Mich. 2020).................................................12, 13, 14, 15

*Jackson v. Loews Hotels, Inc.*,
No. ED CV 18-827, 2019 WL 6721637 (C.D. Cal. July 24, 2019).......................6, 8

*Krottner v. Starbucks Corp.*,
406 F. App'x 129 (9th Cir. 2010) ..............................................................................9

*Kuhns v. Scottrade, Inc.*,
868 F.3d 711 (8th Cir. 2017) ..............................................................................23, 24

*Lee v. Samsung Elecs. Am., Inc.*,
No. 4:21-cv-1321, 2022 WL 4243957 (S.D. Tex. Sept. 13, 2022)....................21, 22

*LO NG Pharmacy Corp. v. Express Scripts, Inc.*,
747 F. Supp. 3d 1203 (E.D. Mo. 2024).............................................................23, 24

*McGowan v. CORE Cashless, LLC*,
No. 2:23-cv-524, 2023 WL 8600561 (W.D. Pa. Oct. 17, 2023)................................7

*Metal Cladding, Inc. v. Brassey*,
159 A.D.2d 958, 553 N.Y.S.2d 255 (1990) ..............................................................18

*Metro. Express Servs., Inc. v. City of Kansas City*,
23 F.3d 1367 (8th Cir. 1994) ......................................................................................3

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) .....................................................................................12

*Moore v. Compass Group USA, Inc.*,
No. 4:18-CV-01962-SEP, 2022 WL 4598558 (E.D. Mo. Sept. 30, 2022) ..............................20

*Morningstar, LLC v. Hardee's Food Sys., Inc.*,
2009 WL 36406 (E.D. Mo. Jan. 6, 2009) ................................................................................23

*Negron v. Ascension Health*,
No. 4:24-CV-00669, 2025 WL 2710014 (E.D. Mo. Sept. 23, 2025) ........................................5

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015)...................................................................................................19

*Patterson v. McMickle*,
191 S.W.3d 819 (Tex. App. —Fort Worth 2006, no pet.) ........................................................21

*Pemberton v. Nationstar Mortg. LLC*,
331 F. Supp. 3d 1018 (S.D. Cal. 2018)...............................................................................15, 16

*Peters v. St. Joseph Servs. Corp.*,
74 F. Supp. 3d 847 (S.D. Tex. 2015) ......................................................................................6

*Pica v. Delta Air Lines, Inc.*,
No. CV 18-2876, 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018)............................................14

*Pulliam v. W. Tech. Grp., LLC*,
No. 8:23-CV-159, 2024 WL 356777 (D. Neb. Jan. 19, 2024).................................................6

*Razuki v. Caliber Home Loans, Inc.*,
No. 17cv1718, 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ..................................................8

*Reeves v. 21st Century Centennial Ins. Co.*,
No. 4:22-cv-00270, 2022 WL 2209412 (E.D. Mo. June 21, 2022)........................................23

*Reyes v. Cap. One Fin. Corp.*,
No. CV 22-1176, 2023 WL 2540567 (E.D.N.Y. Feb. 28, 2023)............................................11

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023).................................................................................14, 17

*In re Samsung Data Sec. Breach Litig.*,
761 F. Supp. 3d 781 (D.N.J. 2025) .........................................................................................7

*Schechner v. Whirlpool Corp.*,
237 F. Supp. 3d 601 (E.D. Mich. 2017)..................................................................................18

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
69 Misc. 3d 597, 131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) ...................................13, 14, 15, 19

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012)..................................................................17, 18

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014)..................................................................11, 12

*Stahl v. U.S. Dep't of Agric.*,
   327 F.3d 697 (8th Cir. 2003) ....................................................................................2

*In re SuperValu, Inc.*,
   870 F.3d 763 (8th Cir. 2017) .................................................................3, 4, 5, 7, 9

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)..................................................................................4, 7, 9, 24

*Venkatraman v. Bank of Am., N.A.*,
   No. 25-10969, 2026 WL 1008501 (5th Cir. Apr. 14, 2026).....................................20

*Yuille v. Uphold HQ Inc.*,
   686 F. Supp. 3d 323 (S.D.N.Y. 2023)......................................................................19

*Zean v. Fairview Health Servs.*,
   858 F.3d 520 (8th Cir. 2017) ....................................................................................2

*Zeni v. Anderson*,
   397 Mich. 117, 243 N.W.2d 270 (1976)...................................................................14

**Statutes and Other Authorities**

28 U.S.C. § 2201..................................................................................................................23

Fed. R. Civ. P. 12(b)(1).....................................................................................................1, 3

Fed. R. Civ. P. 12(b)(6).........................................................................................................1

Fed. R. Civ. P. 57................................................................................................................23

U.S. Const. art. III, § 2..........................................................................................................3

New York General Business Law § 349...........................................................................3, 18

Tex. Bus. & Com. Code § 17.45(5) .....................................................................................22

Tex. Bus. & Com. Code § 17.505........................................................................................22

Tex. Bus. & Com. Code § 17.505(a) ...................................................................................22

Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon"), by and through its undersigned counsel, submits these suggestions in support of its motion to dismiss the Consolidated Class Action Complaint (ECF No. 20, "Compl.") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I.   INTRODUCTION

Plaintiffs seek to hold Verizon liable in connection with a data breach that allegedly occurred on March 17, 2026, at Russell Cellular, Inc. ("Russell Cellular"), an authorized Verizon retailer. But the Complaint does not allege a breach of any Verizon system, nor does it allege that Verizon owns, operates, or controls Russell Cellular's systems. Instead, Plaintiffs allege only that they provided information to Russell Cellular and that, after Russell Cellular's database was allegedly compromised by an unknown threat actor, some of that information, amounting to little more than phone-book data, was offered for sale on the dark web.

The claims against Verizon should be dismissed in their entirety. The named Plaintiffs lack Article III standing because they do not allege a concrete injury fairly traceable to Verizon. And even if standing existed, Plaintiffs fail to state any plausible claim against Verizon. The negligence claim is barred by the economic loss rule or analogous separate-and-distinct duty rule; the negligence *per se* claim fails because it is predicated on the Federal Trade Commission ("FTC") Act, which provides no private right of action; the express-contract claim fails because Plaintiffs identify no contractual provision Verizon breached; the unjust-enrichment claim is duplicative and unavailable where an alleged contract governs the same subject matter; the New York and Texas consumer-protection claims fail because Plaintiffs do not plausibly allege any materially misleading statement, actionable omission, or unconscionable conduct; the declaratory-relief

1

claim is duplicative and rests on speculative future harm; and the damages Plaintiffs seek are independently barred by the applicable customer agreements' limitation-of-liability provisions.[1]

## II.      FACTUAL BACKGROUND

Russell Cellular is an independent company that operates as an authorized Verizon retailer. Compl. ¶ 34. Plaintiffs Jonathan Aguilar-Vazquez ("Aguilar-Vazquez"), Adessa Consulting, Inc. ("Adessa"), and Tina Burns ("Burns") each allege that they purchased cell phones and Verizon wireless service at a Russell Cellular store. *Id*. ¶¶ 23–25. In connection with those purchases, Plaintiffs provided information to Russell Cellular. *Id*. ¶¶ 94, 102, 111.

### A.      The Alleged Data Breach

Plaintiffs allege that, in March 2026, an unidentified unauthorized third party compromised Russell Cellular's system and offered certain customer information for sale on the dark web. Compl. ¶¶ 57–58. On April 10, 2026, Verizon sent notice to affected individuals. *Id*. ¶ 61. According to the Complaint, Verizon disclosed that an unauthorized third party had accessed certain customer information, including customer names, phone numbers, price-plan names, and a device identifier known as an International Mobile Equipment Identity ("IMEI") number.[2] *Id*.

---

[1] The Court may consider the My Verizon Wireless Customer Agreement (which applies to Aquilar-Vazquez and Burns), the April 29, 2025 Installment Loan Agreement/Security Agreement with Aguilar-Vazquez, the November 3, 2025 Installment Loan Agreement/Security Agreement with Burns, the Wireless Retail Account Agreement with Adessa Consulting, Inc., and Verizon's Privacy Policy, attached as **Exhibits A, B, C, D, and E**, respectively, because they are necessarily embraced by the Complaint and integral to Plaintiffs' claims. Plaintiffs' claims against Verizon expressly rely on Verizon's alleged contractual and privacy-related obligations, and in a contract case, "the court may examine the contract documents in deciding a motion to dismiss." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003)). That remains true even where the contract documents are not attached to the complaint and refute a breach-of-contract claim or an alleged statutory or common-law duty. *Id.* (collecting cases).

[2] Plaintiffs Aguilar-Vazquez and Burns allege that they received notice. Compl. ¶¶ 92, 109. Adessa does not allege that it received notice from Verizon or that Verizon determined its information was affected. *See id*. ¶¶ 101–08. And although the Complaint elsewhere alleges that additional categories of information were disclosed, *see id.* ¶¶ 14, 59, Plaintiffs do not plead any factual basis for those assertions as to any of the three Plaintiffs.

2

### B. Plaintiffs' Alleged Injuries and Claims

Plaintiffs allege that, after the incident, they spent time reviewing the potential impact of the breach, monitoring accounts, considering identity-theft and credit-monitoring protections, and taking steps to mitigate risk. *Id*. ¶¶ 95, 103, 112. Aguilar-Vazquez and Burns also allege an increase in spam calls or text messages. *Id*. ¶¶ 96, 104. Plaintiffs further claim damages based on the alleged diminution in value of their personal information, as well as lost time, annoyance, inconvenience, interference, and lost opportunity costs. *Id*. ¶¶ 97, 105, 113.

Plaintiffs filed the Consolidated Class Action Complaint on June 12, 2026. They allege, among other things, that Verizon knew customer information was a target for theft, failed adequately to oversee Russell Cellular's handling of that information, and failed to comply with the Verizon Privacy Policy. *Id*. ¶¶ 69–70, 90. The Complaint asserts seven claims against Verizon: negligence (Count 1), negligence *per se* (Count 2), breach of express contract (Count 4), unjust enrichment (Count 5), violation of New York General Business Law § 349 (Count 7), violation of the Texas Deceptive Trade Practices Act (Count 8), and claims for declaratory and injunctive relief (Count 9). Each claim fails as a matter of law for the reasons set forth below.

## III. LEGAL STANDARD

### A. Rule 12(b)(1) and Article III Standing

Under Rule 12(b)(1), a party may move to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III limits federal jurisdiction to actual "Cases" and "Controversies," and standing is an essential component of that requirement. U.S. Const. art. III, § 2; *In re SuperValu, Inc.*, 870 F.3d 763, 767–68 (8th Cir. 2017).[3] To establish standing, a plaintiff

---

[3] Article III standing is governed by federal law. The Court therefore applies Eighth Circuit precedent in determining whether Plaintiffs have adequately alleged standing to sue in federal court. *Metro. Express Servs., Inc. v. City of Kansas City*, 23 F.3d 1367, 1369–70 (8th Cir. 1994) (holding that a plaintiff in a diversity action must establish standing under applicable state law as well as under Article III).

must allege facts showing: (1) an injury in fact that is concrete and particularized; (2) a causal connection between the injury and the challenged conduct; and (3) redressability. *SuperValu*, 870 F.3d at 768. The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

In a putative class action, standing is assessed based on the injuries alleged by the named plaintiffs. *Id.* A named plaintiff who cannot establish standing in his own right may not seek relief on behalf of himself or any class members. *Id.* Plaintiffs also must establish standing for each claim asserted and for each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). If the complaint does not allege facts sufficient to establish standing, dismissal is required. *SuperValu*, 870 F.3d at 768.

### B. Rule 12(b)(6) and Failure to State a Cause of Action

To survive a motion to dismiss, Plaintiffs must allege facts sufficient to state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). A complaint does not suffice if it offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id*. at 555. Nor do "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, Plaintiffs must plead factual content that permits the Court to draw a reasonable inference that Verizon is liable for the misconduct alleged. *Id*. Allegations showing no more than a sheer possibility of liability fall short of this standard. *Id*.

### IV. ARGUMENT

#### A. Plaintiffs Lack Article III Standing

Under Eighth Circuit law, alleging that personal information was exposed in a data breach is not enough, by itself, to establish Article III standing. A plaintiff instead must allege a concrete

injury that is actual or imminent, not conjectural or hypothetical. *See SuperValu*, 870 F.3d at 768–70. In this context, the Eighth Circuit distinguishes between plaintiffs who allege actual misuse of their information and plaintiffs who allege only an increased risk of future harm. *Compare id.* at 772–74, *with id*. at 770–72. Allegations of exposure alone, or of self-imposed protective measures taken in response to a speculative future risk, do not suffice. *See id.* at 770–72. Plaintiffs must allege actual misuse of their information or some other concrete, non-speculative injury fairly traceable to the alleged breach.

Plaintiffs Aguilar-Vazquez, Adessa, and Burns do not do so. They do not allege actual misuse of their information, fraudulent charges, identity theft, or any other concrete harm resulting from the alleged breach. Instead, Aguilar-Vazquez and Adessa allege only a "significant uptick" in spam text messages and calls, while all three Plaintiffs allege diminution in the value of their PII or information, as well as "lost time, annoyance, interference, inconvenience, and lost opportunity costs." Compl. ¶¶ 96–97, 104–05, 113. None of those allegations is sufficient to establish standing.

Spam messages and calls – The alleged increase in spam texts and calls does not constitute a concrete injury fairly traceable to the alleged breach. Aguilar-Vazquez and Adessa[4] offer only bare assertions that they experienced more spam communications after the incident. Compl. ¶¶ 96, 104. But the Complaint alleges no facts plausibly linking those communications to the breach. Such conclusory allegations of unwanted communications, without facts establishing causation, are insufficient to support standing. *See Negron v. Ascension Health*, No. 4:24-CV-00669, 2025 WL 2710014, at *6 (E.D. Mo. Sept. 23, 2025) (reasoning that even if plaintiffs had alleged their phone numbers and email addresses were compromised in a data breach, increased spam calls, texts, and emails would not be fairly traceable to alleged breach since "such basic contact

---

[4] Notably, unlike the other named Plaintiffs, Burns does not allege any uptick in spam calls or text messages, or any other irregular activity, following the alleged data breach.

information can be obtained from any number of sources"). Moreover, allegations regarding increased scam or phishing communications simply do "not constitute an injury." *Jackson v. Loews Hotels, Inc.*, No. ED CV 18-827, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) (citing *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 857 (S.D. Tex. 2015) (finding "no injury despite plaintiff receiving target[ed] physical, electronic, and telephonic solicitations") (citation and quotations omitted) and *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) ("The receipt of spam by itself, however, does not constitute a sufficient injury entitling [plaintiff] to compensable relief.")).

Diminution in value of PII or other information – Plaintiffs' assertion that their PII or other information diminished in value fares no better. Compl. ¶¶ 97, 105, 113. Courts within the Eighth Circuit have rejected this theory where plaintiffs do not allege facts showing an actual economic loss or any concrete decline in value tied to the alleged breach. *See, e.g.*, *Duqum v. Scottrade, Inc.*, No. 4:15-CV-1537, 2016 WL 3683001, at *8–9 (E.D. Mo. July 12, 2016) (plaintiffs did not allege injury in fact based on an asserted loss in the value of their PII where they failed to plead facts showing that the breach diminished the value of their information or prevented them from monetizing it); *Pulliam v. W. Tech. Grp., LLC*, No. 8:23-CV-159, 2024 WL 356777, at *8 (D. Neb. Jan. 19, 2024) ("diminished value of Plaintiffs' personal information is not an injury sufficient to confer standing"); *Devine v. Horizontal Integration, Inc.*, No. 24-CV-4555, 2025 WL 3687972, at *5 (D. Minn. Dec. 19, 2025) (plaintiff failed to allege injury in fact based on diminution in the value of PII/PHI because the complaint did not plausibly allege what information was disclosed, what value it had, or how the data breach diminished that value). That is the case here. Plaintiffs do not allege that they tried to monetize their information, that it had any ascertainable market value to them, that any such value declined, or that they suffered any realized pecuniary loss. Their

diminution-in-value theory instead repackages speculative future harm as present economic loss, which is insufficient to establish standing. *See SuperValu*, 870 F.3d at 769–70; *see also TransUnion LLC*, 594 U.S. at 426–27 (Article III requires a concrete injury, not a speculative risk of future harm).

Lost time and mitigation efforts – Plaintiffs' allegations of lost time, annoyance, inconvenience, and related mitigation efforts are likewise insufficient. Where the alleged future harm is speculative rather than certainly impending, time and money spent guarding against that harm are merely self-imposed and do not create standing. *See SuperValu*, 870 F.3d at 771; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"); *Beck v. McDonald*, 848 F.3d 262, 276–77 (4th Cir. 2017) ("Self-imposed harms cannot confer standing."). Because Aguilar-Vazquez, Adessa, and Burns do not allege actual misuse or any non-speculative threat of imminent misuse, their alleged mitigation efforts and inconvenience do not qualify as injuries in fact.

Sensitivity of the information – That conclusion is reinforced by the nature of the allegedly exposed information. The Complaint concerns names, phone numbers, price-plan information, and IMEI numbers—not the sort of highly sensitive data, such as Social Security numbers, bank-account information, or payment-card data, that would ordinarily support a plausible inference of imminent identity theft or financial fraud. *See* Compl. ¶ 61; *SuperValu*, 870 F.3d at 769–70; *see also In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 797–98 (D.N.J. 2025), *appeal docketed*, No. 25-1895 (3d Cir. May 12, 2025) (finding "an IMEI number, alone, is insufficient" and "Plaintiffs' social engineering theory, which too depends on a 'highly attenuated chain of possibilities,' does not establish Article III standing"); *McGowan v. CORE Cashless, LLC*, No.

7

2:23-cv-524, 2023 WL 8600561, at *11 (W.D. Pa. Oct. 17, 2023) (no risk of imminent injury where there was "no alleged disclosure of social security numbers, dates of birth, driver's license numbers, taxpayer identification numbers, banking information, sensitive tax forms, and passport numbers"), *R. & R. adopted*, 2024 WL 488318 (W.D. Pa. Feb. 8, 2024); *Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) ("Without a hack of information such as social security numbers, account numbers, or credit card numbers, there is no obvious, credible risk of identity theft that risks real, immediate injury."); *Jackson*, 2019 WL 6721637, at *4 ("Plaintiff has once again failed to demonstrate that her name, phone number, email address (but not her email password), and mailing address are sensitive enough pieces of information to give rise to a certainly impending risk of future identity theft or fraud."). Because the allegedly compromised information is not the type of data that, without more, makes misuse likely, Plaintiffs' asserted injuries rest on speculation rather than a concrete or imminent harm.

Overpayment – To the extent Plaintiffs claim an alleged overpayment for goods or services, Compl. ¶¶ 150, 285, 259, they fall short. Plaintiffs did not bargain for cybersecurity insurance. Plaintiffs "do[] not provide any information to show that [they] paid a premium for [Verizon] to provide reasonable and adequate security measures." *Razuki v. Caliber Home Loans, Inc.*, No. 17cv1718, 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018). Plaintiffs do not claim they paid Verizon a specified "sum understood by the parties to be allocated toward customer data protection." *Gardiner v. Walmart Inc.*, No. 20-cv-04618, 2021 WL 2520103, at *6 (N.D. Cal. Mar. 5, 2021); *see also Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017) (no standing absent "factual allegations that would support the claim that Plaintiffs paid a specific amount of money for data security"), *on reconsideration*, 304 F. Supp. 3d 333 (W.D.N.Y. 2018), and *order clarified on other grounds*, 502 F. Supp. 3d 724 (W.D.N.Y. 2020). In fact, the

Customer Agreement and Wireless Retail Account Agreement expressly disclaim such a bargain. Ex. A at 5 ("disallowed damages include those arising out of a Service or device failure, unauthorized access or changes to your account or device"); *see also* Ex. D ¶ 25 ("NEITHER PARTY . . . SHALL BE LIABLE TO THE OTHER PARTY . . . FOR ANY . . . LOSS OF DATA, LOSSES CAUSED BY DEVICES, SOFTWARE OR APPLICATIONS ON THE DEVICES . . . .").

The Complaint's reference to an alleged offer for sale of data on a hacker forum or the dark web does not give rise to standing. Compl. ¶¶ 9–10. At most, those allegations suggest a possibility that information may have been exposed or made available to third parties. But under Article III, exposure alone is not enough; Plaintiffs must allege a concrete injury that is actual or imminent, not speculative. *See SuperValu*, 870 F.3d at 769–70; *TransUnion LLC*, 594 U.S. at 426–27. Nor do these allegations bridge the gap between exposure and misuse. The Complaint does not allege that Plaintiffs' information was actually purchased, accessed, or misused as a result of the alleged posting, or that any such misuse is certainly impending. A generalized allegation that data was offered for sale on the dark web is therefore insufficient to establish injury in fact. *See Clapper*, 568 U.S. at 409 (threatened injury must be certainly impending and not merely speculative).

Because these Plaintiffs allege only exposure and hypothetical downstream harms untethered to any concrete misuse or other non-speculative injury, they have not established Article III standing. Their claims should therefore be dismissed.

### B. Plaintiffs Fail to State a Claim Upon Which Relief Can be Granted

Even if the Court were to find standing (which it should not), Plaintiffs still fail to plead the actual damages necessary to state a claim for relief. *See, e.g., Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (that plaintiffs "pled an injury-in-fact for purposes of Article III

9

standing does not establish that they adequately pled damages for purposes of their state-law claims"); *Doe v. Chao*, 540 U.S. 614, 624–25 (2004) (explaining that an individual may suffer Article III injury and yet fail to plead a proper cause of action). Their claims should therefore be dismissed for that reason alone, as well as for the independent reasons set forth below.

Verizon notes the below reasons are governed by the law selected in the parties' agreements. The Customer Agreement provides that "any disputes covered by it are governed by federal law and the laws of the state encompassing the billing address associated with your Verizon account, without regard to the conflicts of laws and rules of that state." Ex. A at 8. Thus, although Plaintiffs Aguilar-Vazquez and Burns allege they reside in Michigan and Texas, respectively, Compl. ¶¶ 23, 25, residence does not control; billing address does. Ex. A at 8. Aguilar-Vazquez's billing address is in Michigan, Ex. B at 1, and Burns's billing address is in California, Ex. C at 1. Accordingly, Michigan law governs Aguilar-Vazques's claims, and California law governs Burns's claims.[5] As for Plaintiff Adessa, the Wireless Retail Account Agreement provides that New York law governs the agreement's "validity, construction and performance." Ex. D ¶ 34. New York law therefore governs Adessa's claims.

**1. The Negligence Claim is Barred by the Economic Loss and Separate-and-Distinct Duty Rule**

Plaintiffs' negligence claim against Verizon should be dismissed. Plaintiffs allege that Verizon negligently failed to oversee Russell Cellular's data-security practices,[6] causing economic

---

[5] Plaintiff Burns asserts a Texas DTPA claim, but California law governs her remaining claims. Because her only Texas-law claim fails for the reasons discussed in Section IV.B.6 below, she cannot represent the putative Texas Subclass, and the Texas Subclass allegations should be dismissed. *Bishop v. Comm. on Pro. Ethics & Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1288 (8th Cir. 1982) (it should be noted that a named plaintiff has the burden of establishing that a case is certifiable as a class action and that, as the class representative, the named plaintiff meets all of the Rule 23(a) requirements.).

[6] Plaintiffs improperly lump Defendants together and summarily identify duties without pleading facts specific to Verizon. To the extent Plaintiffs contend that Verizon breached a duty to safeguard PII in

and related harm. Compl. ¶¶ 137–53. But that claim is barred by the economic loss rule, or the analogous separate-and-distinct duty rule, under California, Michigan, and New York law. And Plaintiffs have not sufficiently alleged an exception to either rule.

California's economic loss rule bars negligence claims where the alleged duty arises solely from a contract and the claimed harm is purely economic. *See Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016) (dismissing negligence claim because alleged "costs associated with time spent and loss of productivity" were "nothing more than pure economic loss"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 967, 973 (S.D. Cal. 2014) (dismissing negligence claim in data-breach action pursuant to the economic loss rule where plaintiffs alleged only economic harm), *order corrected*, No. 11MD2258, 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014). Although limited exceptions exist for personal injury, property damage, certain special relationships, and a handful of common law circumstances, Plaintiffs do not plausibly allege any such exception. *See In re Sony Gaming*, 996 F. Supp. 2d at 967, 973 (finding plaintiffs failed to plead an exception to the economic loss rule). New York likewise bars negligence claims arising from a service relationship absent a legal duty independent of the contract. *See Davies v. S.A. Dunn & Co., LLC*, 200 A.D.3d 8, 16, 156 N.Y.S.3d 457, 464 (2021) (holding negligence claim could not proceed absent a duty independent of the parties' contractual relationship); *Reyes v. Cap. One Fin. Corp.*, No. CV 22-1176, 2023 WL 2540567, at *6 (E.D.N.Y. Feb. 28, 2023) (dismissing negligence claim in data-breach case under New York law because plaintiff failed to allege an independent duty), *R. & R. adopted*, 2023 WL 2538922 (E.D.N.Y. Mar. 16, 2023). Michigan similarly bars tort claims that merely restate contractual obligations under its separate-and-distinct-duty doctrine. *See*

---

its possession or control, *see* Compl. ¶ 145, that theory fails because the Complaint itself alleges that the compromised data resided in Russell Cellular's database, not Verizon's.

*Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*, 485 F. Supp. 3d 885, 895 (E.D. Mich. 2020) (explaining that plaintiff alleged only negligent nonfeasance where "the actions Plaintiff claims Defendant had a duty to perform were explicitly contemplated and provided for in the parties' contract," and that defendant therefore owed no general duty of care outside the contract); *Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 467–68, 683 N.W.2d 587, 592 (2004) (requiring a duty separate and distinct from any contractual obligations).

That is precisely what Plaintiffs attempt here. The negligence claim seeks recovery for purely economic loss and rests entirely on Verizon's alleged performance of obligations arising from the parties' wireless-services relationship. Because this is a textbook contract-based theory dressed up as a tort, it must be dismissed. *See In re Sony Gaming*, 996 F. Supp. 2d at 967, 973 (The economic loss rule prevents plaintiffs from repackaging contract claims as tort claims).

The Complaint likewise fails to adequately plead any recognized basis for an independent tort duty sufficient to avoid application of the economic loss/separate-and-distinct duty rule. The crux of the Complaint is that Verizon had a "duty to oversee Russell Cellular's implementation and maintenance of reasonable security procedures and practices," and that this supposed duty arose from the parties' relationship, Defendants' alleged control over Plaintiffs' information, the Federal Trade Commission Act ("FTC Act"), and unspecified common law. Compl. ¶¶ 140–41. Plaintiffs offer no factual support for the above conclusion. They merely assert, without more, that a duty exists. *See Iqbal*, 556 U.S. at 678 (threadbare recitals of the elements and mere conclusory statements are not enough to survive a motion to dismiss).

Plaintiffs cannot plead around the economic loss rule by invoking a purported "special relationship" where their negligence claim is not independent of the parties' contract. *See, e.g., Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 536, n.10 (2022) (affirming the

12

economic loss rule applied in a data-breach case and declining to address plaintiffs' special relationship argument because plaintiffs failed to show their negligence claim was independent of the parties' contract).[7]

Nor does the Complaint allege that Verizon controlled Russell Cellular's network or assumed responsibility for its data-protection operations. *See, e.g.*, *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 69 Misc. 3d 597, 607–10, 131 N.Y.S.3d 817, 826–28 (N.Y. Sup. Ct. 2020) (rejecting data-breach claims where the defendant did not control the third party's systems or security operations); *Grifo*, 485 F. Supp. 3d at 894–900 (recognizing no general duty to protect against third-party criminal acts in ordinary commercial relationships and rejecting negligence theories based on failure to prevent third-party cyberattacks absent a special relationship or actual control). To the contrary, the Complaint alleges that "Russell Cellular . . . is an independent company." Compl. ¶ 34. That allegation alone forecloses Plaintiffs' theory that Verizon had a tort duty to supervise Russell Cellular's cybersecurity practices.

Plaintiffs' invocation of the FTC Act does not change the analysis. The Complaint never explains how the FTC Act creates a private, independent duty running from Verizon to Plaintiffs, much less a statutory duty requiring Verizon to supervise an independent third party's cybersecurity practices. Courts have rejected precisely this kind of unsupported invocation of the FTC Act. *See, e.g.*, *Grifo*, 485 F. Supp. 3d at 896–900 (dismissing plaintiffs negligence claim because plaintiff failed to explain how the FTC Act created a duty to prevent a cyberattack).

Because Plaintiffs allege only economic harm and do not plausibly plead an independent tort duty, the negligence claim (Count 1) fails as a matter of law and should be dismissed as to all Plaintiffs, the Nationwide Class, and the Subclasses.

---

[7] And, as a general matter, Plaintiffs' allegations that a special relationship existed are conclusory at best. *See Iqbal*, 556 U.S. at 678 (conclusory statements are insufficient to survive a motion to dismiss).

### 2. Plaintiffs' Negligence *Per Se* Claim Fails Because it is Based on Alleged Violations of the FTC Act, which Provides no Private Right of Action

Count 2 should be dismissed because Plaintiffs cannot bootstrap an FTC Act allegation into a negligence *per se* claim. The FTC Act creates no private right of action; enforcement is committed to the FTC, not private litigants. *See, e.g.*, *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974) (FTC Act vests enforcement authority in the Commission); *Fed. Trade Comm'n v. Owens-Corning Fiberglas Corp.*, 853 F.2d 458, 464 (6th Cir. 1988) (same). Plaintiffs cannot evade that bar by repackaging an alleged FTC Act violation as negligence *per se*.

That conclusion holds under New York, California, and Michigan law alike. New York does not permit negligence *per se* claims based on statutes that provide no private right of action. *See Smahaj*, 69 Misc. 3d at 608 (same); *FritzCo LLC v. Verizon Commc'ns Inc.*, No. 21-CV-10432, 2026 WL 734776, at *7 (S.D.N.Y. Mar. 16, 2026) (dismissing negligence *per se* claim predicated on the FTC Act); *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 503 (S.D.N.Y. 2023) (allowing such a claim would improperly create a private right the statute does not recognize). California is the same: courts look to legislative intent and refuse to use negligence *per se* to supply a cause of action where the statute itself provides none. *See Pica v. Delta Air Lines, Inc.*, No. CV 18-2876, 2018 WL 5861362, at *9 (C.D. Cal. Sept. 18, 2018) (FTC Act cannot support negligence *per se* because it creates no private right of action); *Coppola v. Smith*, 935 F. Supp. 2d 993, 1016–17 (E.D. Cal. 2013) (negligence *per se* is not an independent cause of action). Michigan law independently forecloses Count 2 because it does not recognize negligence *per se* as a standalone claim, and a statutory violation does not itself create a duty. *See Zeni v. Anderson*, 397 Mich. 117, 122, 243 N.W.2d 270 (1976) (statutory violation bears on standard of care, not automatic liability); *Candelaria v. B.C. Gen. Contractors, Inc.*, 236 Mich. App. 67, 82, 600 N.W.2d 348 (1999) (same); *Grifo*, 485 F. Supp. 3d at 899–900 (holding plaintiff failed to establish that the FTC Act created a

14

duty of care supporting its negligence claim). Count 2 should therefore be dismissed as to all Plaintiffs, the Nationwide Class, and the Subclasses.

### 3. The Breach-of-Express-Contract Claim Fails Because Plaintiffs Identify No Specific Contractual Provision Verizon Breached

Plaintiffs allege that Verizon's Privacy Policy created an express contract and that Verizon breached that contract by inadequately safeguarding, monitoring, and controlling access to PII; improperly sharing data without sufficient protections; failing to oversee Russell Cellular's security practices; and failing to timely detect, respond to, and notify customers about the data breach. *See* Compl. ¶¶ 195–202. This claim fails under New York, California, and Michigan law because Plaintiffs do not identify any specific contract provisions that impose the duties they claim Verizon breached. Accordingly, Count 4 should be dismissed.

To state a breach-of-contract claim, Plaintiffs must identify the specific contract provisions on which the claim is based. *See Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 49 Misc. 3d 1027, 1039, 19 N.Y.S.3d 850, 859 (N.Y. Sup. Ct. 2015) (breach claim must plead the contractual provisions on which the claim is based); *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1036–38 (S.D. Cal. 2018) (dismissing breach claim not grounded in any contractual term and contradicted by the agreement's text). Failure to identify a contract term that actually supports the asserted duty warrants dismissal. *See Smahaj*, 69 Misc. 3d at 597, 607 (dismissing a data-breach contract claim where the plaintiff failed to identify the contractual provision allegedly breached); *Grifo,* 485 F. Supp. 3d at 891 ("If no [contract] terms applied, there can be no breach.").

Here, Plaintiffs rely exclusively on a general statement in the Privacy Policy that Verizon uses "technical, administrative and physical safeguards *to help protect* against unauthorized access to, use or disclosure of information" and trains its "employees on the importance of privacy and security" and the proper way to handle it. Compl. ¶ 186 (emphasis added); *see* Ex. E at 17. From

15

that qualified language, Plaintiffs attempt to infer a sweeping set of contractual obligations, including duties to guarantee the safety of PII, oversee Russell Cellular's security practices, and timely detect, respond to, and notify customers of data breaches. *See* Compl. ¶¶ 195–202. The Policy makes no such promises.

To the contrary, the Privacy Policy's express terms foreclose Plaintiffs' theory. Courts may resolve a contract claim on a motion to dismiss where, as here, the unambiguous contract language defeats the alleged breach, and they need not accept allegations contradicted by the contract itself. *See Pemberton*, 331 F. Supp. 3d at 1036–38; *Castorino v. Citibank, N.A.*, No. 07 Civ. 10606, 2008 WL 5114482, at *3–4 (S.D.N.Y. Dec. 5, 2008) (dismissing where the contract provisions "clearly defeat[ed]" plaintiff's theory). The Privacy Policy expressly warns that Verizon's safeguards are not failproof. *See* Ex. E at 17 ("[W]e can't guarantee that our safeguards will prevent every unauthorized attempt to access, use or disclose personal information."). And even under Plaintiffs' theory, the alleged disclosure resulted from a criminal intrusion into Russell Cellular's database by an unknown threat actor. Plaintiffs therefore do not plausibly allege that any failure by Verizon to restrict access, assess risk, or otherwise comply with any specific contractual obligation proximately caused their alleged injury. Plaintiffs' breach claim—which depends on reading a qualified disclosure as a promise of breach-proof security—fails as a matter of law.

Plaintiffs' breach of express contract claim should be dismissed as to all Plaintiffs, the Nationwide Class, and the Subclasses.

### 4. The Unjust-Enrichment Claim Fails Because It Repackages Plaintiffs' Other Theories and Seeks Quasi-Contract Relief Despite Governing Contracts

Plaintiffs allege that they conferred a benefit on Defendants by paying for Defendants' goods and services and by providing their PII, and that a portion of those payments supposedly was intended to fund protection of that information. *See* Compl. ¶¶ 216–17. That unjust-

16

enrichment claim against Verizon fails under New York, California, and Michigan law because it merely repackages Plaintiffs' contract and tort theories, seeks quasi-contract relief despite the contracts Plaintiffs allege govern the same subject matter, and does not plausibly allege that Verizon retained a distinct benefit for which Plaintiffs received nothing in return. Count 5 should therefore be dismissed.

First, unjust enrichment is unavailable where it duplicates other claims based on the same alleged misconduct. Under New York law, unjust enrichment is not a "catchall cause of action" and must be dismissed where it simply restates a contract or tort theory. *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790–91 (2012) (unjust enrichment lies only in unusual cases where no contract or recognized tort supplies relief); *Rider*, 657 F. Supp. 3d at 502–03 (dismissing unjust-enrichment claim based on alleged underinvestment in data security as duplicative). California is the same. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 973–74 (S.D. Cal. 2012) (holding unjust enrichment is not a proper standalone cause of action under California law). Michigan likewise bars unjust-enrichment claims where an express contract covers the same subject. *Acrisure, LLC v. Hudak*, 618 F. Supp. 3d 642, 657 (W.D. Mich. 2022) (same). Here, Plaintiffs' unjust-enrichment theory is identical to their contract and negligence theories: Verizon supposedly failed to provide adequate data security despite payments Plaintiffs made for its services. Compl. ¶¶ 217–19.

Second, the claim independently fails because Plaintiffs expressly allege a contract with Verizon governing the same data-security obligations. Plaintiffs allege that Verizon's Privacy Policy formed part of a valid contract, that Verizon promised to safeguard customer information, and that Verizon breached those promises. *See id*. ¶¶ 183–205. Having alleged an enforceable

17

contract on that subject, Plaintiffs cannot recast the same alleged misconduct as unjust enrichment. *See Corsello*, 18 N.Y.3d at 790–91; *Acrisure*, 618 F. Supp. 3d at 657.

Third, Plaintiffs do not plausibly allege that Verizon retained a distinct, unjust benefit. Plaintiffs paid for wireless products and services and, by their own allegations, received them. Their real complaint is that Verizon should have spent more on cybersecurity. But an alleged underinvestment in data security is not a separate benefit unjustly retained; it is just another way of asserting deficient performance. *See Metal Cladding, Inc. v. Brassey*, 159 A.D.2d 958, 958, 553 N.Y.S.2d 255, 256 (1990) (no equitable claim where plaintiff received the benefit of the bargain); *In re Sony*, 903 F. Supp. 2d at 974 (rejecting unjust-enrichment theory in data-breach case); *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 614–15 (E.D. Mich. 2017) (same where plaintiffs received the purchased product). Nor does Plaintiffs' provision of PII change the analysis, because that information was simply part of the parties' consumer relationship, not a separately compensable benefit. Count 5 should therefore be dismissed as to all Plaintiffs, the Nationwide Class, and the Subclasses.

### 5. Plaintiff Adessa and the New York Subclass Fail to State a Claim for Violation of New York's General Business Law Section 349

Plaintiff Adessa and the putative New York Subclass fail to state a valid claim under New York's General Business Law ("GBL") § 349. Although Section 349(a) broadly prohibits "[u]nfair, deceptive, or abusive acts or practices," private plaintiffs may sue only for deceptive acts or practices. *Id.* ¶ 349(h). To state such a claim, a plaintiff must allege consumer-oriented conduct that was materially misleading and caused injury. *Camm v. Reach Fin, LLC*, No. 25 Civ. 1921, 2026 WL 861670, at *6 (S.D.N.Y. Mar. 30, 2026) (quoting *City of New York* v. *Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009)). The allegedly misleading act must be likely to

18

mislead a reasonable consumer acting reasonably under the circumstances. *Id.* at \*7 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).

That standard is not met here. Plaintiff points to generalized statements that Verizon employed reasonable safeguards and maintained security measures to protect customer information. *See* Compl. ¶¶ 248, 250–52. But Verizon did not promise perfect security. To the contrary, Verizon's Privacy Policy expressly states that although Verizon "strive[s] to keep information secure, [it] can't guarantee that [its] safeguards will prevent every unauthorized attempt to access, use or disclose personal information." Ex. E at 17. In light of that disclosure, Plaintiff does not plausibly allege any materially misleading statement.

New York courts routinely reject efforts to convert alleged data-security failures into deceptive-practice claims based on generalized privacy statements. *See, e.g.*, *Abdale*, 49 Misc. 3d at 1027, 1039–41 (holding that alleged failures to safeguard patient information and notify plaintiffs of a breach were not deceptive under § 349 because the privacy policy and online notices did not guarantee that information could never be stolen or hacked); *Smahaj*, 69 Misc. 3d 597 at 609 (same); *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 344–48 (S.D.N.Y. 2023) (holding that reasonable consumers do not interpret cybersecurity representations as promises of perfect security and that a subsequent hack, standing alone, does not make those representations deceptive); *In re ESO Sols., Inc. Breach Litig.*, No. 1:23-CV-1557, 2024 WL 4456703, at \*13 (W.D. Tex. July 30, 2024) (summarizing New York law to the same effect and further explaining that failure to disclose an unknown cybersecurity vulnerability is not deceptive). Plaintiff's Section 349 theory fails for the same reason: it depends on the mistaken premise that Verizon's privacy statements guaranteed absolute protection against unauthorized access, which it did not.

The claim also fails to the extent Plaintiff attempts to premise it on alleged violations of the FTC Act. The FTC Act provides no private right of action, and courts regularly reject attempts to use Section 349 to enforce it indirectly. *See Alfred Dunhill*, 499 F.2d at 237 (explaining that only the Federal Trade Commission can enforce FTCA claims); *see Fero*, 236 F. Supp. 3d at 777 (dismissing Plaintiff's GBL § 349 claim to the extent it rested on violations of the 15 U.S.C. § 45). Count 7 should therefore be dismissed as to Adessa and the New York Subclass.

### 6. Plaintiff Burns and the Texas Subclass Fail to State a Claim for Violation of the Texas Deceptive Trade Practices-Consumer Protection Act

Plaintiff Burns[8] and the putative Texas Subclass assert claims under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") based on alleged misrepresentations, failures to disclose, and unconscionable conduct. *See* Compl. ¶¶ 265–290. None is plausibility alleged, much less with the particularity required under Rule 9(b).

Federal courts, including those in Missouri, apply Rule 9(b)'s heightened pleading standard when analyzing DTPA claims that sound in fraud. *See Moore v. Compass Group USA, Inc.*, No. 4:18-CV-01962-SEP, 2022 WL 4598558, at *8 (E.D. Mo. Sept. 30, 2022) (explaining "federal courts routinely apply Rule 9(b) to [] statutory claims," including the DTPA and citing a Northern District of Texas case in support); *see also Venkatraman v. Bank of Am., N.A.*, No. 25-10969, 2026 WL 1008501, at *2 (5th Cir. Apr. 14, 2026) (citing *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) for the proposition that Rule 9(b) applies to DTPA claims). Because Plaintiff's DTPA claim sounds in fraud, *see* Compl. ¶¶ 272–277, 284, Rule 9(b)'s heightened pleading requirement applies.

---

[8] Although California law governs Plaintiff Burns's contract-based and common law claims, Verizon's records indicate that Burns transacted with Russell Cellular in Texas. Verizon therefore addresses her Texas DTPA claim separately and for completeness.

20

To state a DTPA claim, a plaintiff must allege consumer status, a false, misleading, or deceptive act under § 17.46(b) or an unconscionable act under § 17.50(a)(3), and actual damages. *Lee v. Samsung Elecs. Am., Inc.*, No. 4:21-cv-1321, 2022 WL 4243957, at *3 (S.D. Tex. Sept. 13, 2022) (citing *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002)). For the reasons stated below, Plaintiff's DTPA allegations lack the particularity required under Rule 9(b) and should be dismissed. *See Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 479–81 (E.D. Tex. 2021) (dismissing plaintiff's DTPA allegations under Rule 9(b)).

The misrepresentation theory fails because the Complaint identifies no specific Verizon statement guaranteeing absolute security or plausibly alleges that any such statement was false when made. *See* Compl. ¶¶ 272–76; *cf. Lee*, 2022 WL 4243957, at *3–4 (holding plaintiffs plausibly stated a DTPA claim where they identified a specific product representation—"black stainless steel"—and alleged concrete facts showing that the representation was false and material to the purchase). Verizon's Privacy Policy expressly states that Verizon cannot guarantee the safety of customer information, foreclosing any claim that it promised breach-proof security. Ex. E at 17.

The failure-to-disclose theory fails for the same reason. A DTPA omission claim requires showing that the defendant knew the undisclosed information, failed to disclose it to induce the transactions, and that the consumer would not have entered the transaction had the information been disclosed. *See Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App. —Fort Worth 2006, no pet.) (mere nondisclosure of material information is insufficient to establish as actionable DTPA claim absent facts showing intent to induce the transaction). The Complaint pleads only the conclusory assertion that Verizon knew of security deficiencies and failed to disclose them. It does not plausibly allege intentional nondisclosure to induce Plaintiff Burns or other Texas consumers

21

to purchase or maintain Verizon services. Nor does Plaintiff allege she would not have purchased the goods or services had additional disclosure been made.

The unconscionability theory fares no better. The DTPA defines unconscionable conduct as taking advantage of a consumer's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. Tex. Bus. & Com. Code § 17.45(5). Plaintiff alleges only that Defendants knew more about their own security practices than consumers and intended to exploit that information imbalance. Compl. ¶¶ 280–83. That formulaic allegation does not plausibly show grossly unfair conduct. *See Lee*, 2022 WL 4243957, at *4 (dismissing unconscionability claim where plaintiffs failed to allege facts showing defendant took advantage of consumers to a grossly unfair degree).

The DTPA claim is also subject to abatement because the statute requires a consumer seeking damages to provide written notice at least 60 days before filing suit. Tex. Bus. & Com. Code § 17.505(a). The Complaint alleges notice was provided on June 11, 2026, Compl. ¶ 287,[9] but the operative Complaint was filed the very next day, on June 12, 2026—far short of the statutory waiting period. And Plaintiffs do not (and cannot) plead facts bringing Burns within either exception to the notice requirement: that pre-suit notice was impracticable because limitations would run, or that the DTPA claim was asserted as a counterclaim. *See* Tex. Bus. & Com. Code § 17.505; *Franklin*, 569 F. Supp. 3d at 482–83 (plaintiff invoking an exception must plead facts showing it applies).

Accordingly, the DTPA claim (Count 8) should be dismissed on the merits as to Plaintiff Burns and the Subclass or, at minimum, abated for failure to satisfy § 17.505.

---

[9] Although the Complaint alleges that notice was provided on June 11, 2026, the notice itself is dated June 15, 2026, and Verizon did not receive it until June 25, 2026.

22

**7. The Claim for Declaratory and Injunctive Relief Must be Dismissed Because it is Duplicative and Devoid of Plausible Allegations of Redressable Harm**

Plaintiffs' declaratory-judgment count should be dismissed because the Declaratory Judgment Act is procedural and discretionary, and it requires an actual controversy that can be immediately resolved by a declaration of the parties' rights and duties.[10] *See Allstate Vehicle & Prop. Ins. Co. v. Adams*, No. 3:15-CV-05121-BCW, 2016 WL 10637112, at \*2 (W.D. Mo. Mar. 8, 2016) (explaining that the Act provides a procedural remedy, not substantive rights); *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017) (affirming dismissal of a data-breach declaratory claim that focused on past conduct rather than a dispute fit for immediate declaratory resolution).

Here, Plaintiffs seek declarations that Defendants owed duties to protect PII, breached those duties, and continue to maintain inadequate safeguards. Compl. ¶ 296. But as against Verizon, those requested declarations are entirely duplicative of Plaintiffs' negligence and breach-of-contract claims, both of which turn on the same alleged duties and breaches and would resolve the same issues. *See LO NG Pharmacy Corp. v. Express Scripts, Inc.*, 747 F. Supp. 3d 1203, 1207–08 (E.D. Mo. 2024) (dismissing a declaratory-judgment claim as duplicative where it was closely related factually to the substantive claim and afforded no independent relief); *Reeves v. 21st Century Centennial Ins. Co.*, No. 4:22-cv-00270, 2022 WL 2209412, at \*3 (E.D. Mo. June 21, 2022) (explaining that courts routinely dismiss declaratory-judgment claims when they duplicate breach-of-contract claims); *Morningstar, LLC v. Hardee's Food Sys., Inc.*, 2009 WL 36406, at \*4 (E.D. Mo. Jan. 6, 2009) (holding a duplicative declaratory claim served no useful purpose);

---

[10] Because the scope and sequencing of relief under the Declaratory Judgment Act are procedural matters governed by federal law, not state law, Eighth Circuit precedent controls Plaintiffs' declaratory-judgment claim. *See* 28 U.S.C. § 2201; Fed. R. Civ. P. 57; *Acuity v. N. Cent. Video, LLLP*, 468 F. Supp. 2d 1071, 1076 (D.N.D. 2006) (holding that "questions as to what should be decided in a federal declaratory action, and in what sequence relative to an underlying state tort action, are issues of procedure" governed by federal law).

*Cincinnati Indem. Co. v. A & K Constr. Co.*, 542 F.3d 623, 625 (8th Cir. 2008) (recognizing that declaratory relief may be declined where it serves no useful purpose).

The claim independently fails because Plaintiffs seek forward-looking relief based on a completed breach and speculative future injury. Plaintiffs ask the Court to order extensive future security measures and mitigation services, Compl. ¶ 297, but courts require a sufficiently imminent and substantial risk of future harm, not a merely hypothetical possibility. *See TransUnion LLC*, 594 U.S. at 435; *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1052–53 (E.D. Mo. 2009) (holding that alleged future identity-theft harm in a data-breach case was too speculative because it depended on multiple contingent "if's"); *Devine*, 2025 WL 3687972, at *3 (dismissing injunctive and declaratory requests where allegations of possible future breaches were conclusory and insufficient).

Because Count 9 seeks to regulate future conduct based on a past breach, Plaintiffs have alleged nothing more than hypothetical future harm, and because the same issues will be resolved through Plaintiffs' substantive claims, Count 9 should be dismissed as to all Plaintiffs, the Nationwide Class, and the Subclasses. *See Kuhns*, 868 F.3d at 718 (rejecting a data-breach declaratory claim focused on past conduct and generalized compliance obligations); *LO NG Pharmacy*, 747 F. Supp. 3d at 1207–08 (dismissing duplicative declaratory claim).

### 8. Plaintiffs Agreed to a Limitation of Liability Provision that Bars the Relief They Seek

Even if Plaintiffs had otherwise stated a claim (which they have not), the Customer Agreement and Wireless Retail Account Agreement independently foreclose the damages they seek. Plaintiffs agreed that Verizon would not be liable for any indirect, special, consequential, incidental, or punitive damages. Ex. A at 5; Ex. D ¶ 25. Yet Plaintiffs seek exactly those types of damages: an alleged increase in spam calls and text messages, diminution in value of their personal

24

information, and "lost time, annoyance, interference, inconvenience, and lost opportunity costs." Compl. ¶¶ 96–97, 104–05, 113. Those alleged harms are, at most, indirect, incidental, or consequential damages and thus are contractually barred. *See In re Brinker Data Incident Litig.*, No. 3:18-cv-686, 2020 WL 691848, at *13 (M.D. Fla. Jan. 27, 2020). Courts routinely enforce limitation of liability clauses in similar cases, including where, as here, the clauses foreclose the very categories of damages plaintiffs seek. *See, e.g.*, *Electron Trading, LLC v. Morgan Stanley & Co. LLC*, No. 4:23-cv-00186, 157 A.D.3d 579, 580, 69 N.Y.S.3d 633, 635 (2018); *Gerber v. Twitter*, No. 4:23-cv00186, 2024 WL 1354449, at *5 (N.D. Cal. Mar. 29, 2024).

## V.      CONCLUSION

For the foregoing reasons, Verizon respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, as to all named Plaintiffs, the putative Nationwide Class, and the putative Subclasses.

Dated: July 13, 2026

Respectfully submitted,

*/s/ Taylor C. Spillers*
Taylor C. Spillers (MO #74846)
**HUNTON ANDREWS KURTH, LLP**
600 Travis Street
Suite 4200
Houston, TX 77002
Tel: (713) 220-4934
tspillers@hunton.com

Tara L. Elgie*
**HUNTON ANDREWS KURTH, LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel: (804)-788-8200
telgie@hunton.com

*admitted pro hac vice

*Counsel for Defendant Cellco Partnership d/b/a Verizon Wireless*

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 13, 2026, the foregoing was filed electronically with the Clerk of Court using the CM/ECF System and was thereby served on all counsel of record.

/s/ Taylor C. Spillers
Taylor C. Spillers

Case 6:26-cv-03218-MBB    Document 35    Filed 07/13/26    Page 33 of 33