**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JONATHAN AGUILAR-VAZQUEZ, ADESSA CONSULTING, INC. and TINA BURNS, individually and on behalf of all those similarly situated, | ) | |
| Plaintiffs, | ) | Case No.: 6:26-cv-03218-MBB |
| v. | ) | |
| RUSSELL CELLULAR, INC., and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | ) | |
| Defendants. | ) | |

**DEFENDANT RUSSELL CELLULAR, INC.'S REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

## I. Introduction

Plaintiffs' opposition litigates a different pleading than the one they filed, asserting as established fact that their information was "stolen," "exfiltrated," and "offered for sale." *See* Plaintiffs' Opposition to Russell Cellular's Motion ("Opposition" or "Opp'n") at 1, 3, 7. But the Complaint says otherwise. Plaintiffs actually plead that they do not know whether any information was "downloaded, exfiltrated, disseminated, or otherwise misused," and no Plaintiff alleges misuse of anything. Consolidated Class Action Complaint ("Complaint" or "Compl.") Dkt. 20 ¶¶ 57–58, 65–66, 92, 109. Plaintiffs cannot amend their pleading through their briefing, and this is not the only example.

Plaintiffs' choice-of-law position rests on a premise trying to assert a Missouri nexus that is not written in the Complaint, and their cited authorities show that choice of law issues can be resolved at the pleading stage – and not in their favor either way. Notably, the Opposition never answers two of Russell Cellular's dispositive arguments, which on their own dispose of Adessa Consulting, Inc. ("Adessa") entirely, including Count 7, and Count 2 as to Aguilar-Vazquez. Plaintiffs' contemporaneous opposition to Verizon's motion concedes several further points. Dkt. 41 ("Verizon Opp'n"). As explained below, this highlights why the Oppositions confirm Plaintiffs' pleading should be dismissed.

## II. The Choice of Law Analysis is Neither Premature nor Incomplete

The Complaint nowhere alleges that Russell Cellular's data-security decisions were made in Missouri. The only support Plaintiffs offer is a venue allegation stating "[u]pon information and belief" that the conduct "originated, at least in part," in this District. Compl. ¶ 31. That allegation sits alongside the admission that the root cause and "the precise manner in which Russell Cellular's systems were compromised" remain undisclosed. *Id*. ¶¶ 65–66. What the Complaint *does* plead is each Plaintiff's residence and the place of each alleged injury and alleged "mitigation" efforts: Michigan, New York, and Texas. *See Id*. ¶¶ 23–25, 92–116.

Also, if the Court were to accept Plaintiffs' premise, then Plaintiffs appear to be suggesting the anomalous position that the statutory claims tied to the citizenship of the Plaintiffs (invoked

under the various state law regimes chosen), should receive a *different* analysis from their tort and contract claims and common law claims arising out of the identical facts. This makes little sense and is why, under Missouri's most-significant-relationship test, courts apply a "presumption that the state with the most significant relationship is the state where the injury occurred, absent an overriding interest of another state based on the factors articulated in section 6 [of the Restatement]." *Dorman v. Emerson Elec. Co*., 23 F.3d 1354, 1358 (8th Cir. 1994).

Plaintiffs' own authority conducted the full most-significant-relationship analysis on a motion to dismiss. *Mackey v. Belden, Inc.*, 2021 WL 3363174, at *2–3 (E.D. Mo. Aug. 3, 2021). And the result in *Mackey* is distinguishable because in *Mackey,* the complaint placed the defendant's systems, the compromised data, and the challenged security decisions in Missouri. This Complaint places none of them anywhere – but Plaintiffs' contracts with Verizon place their claims against Verizon squarely in the contractually chosen jurisdictions between Plaintiffs and Verzion.[1]

The Eighth Circuit resolved the surviving *SuperValu* plaintiff's claims under his home State's law at the same stage. *In re SuperValu, Inc.*, 925 F.3d 955, 960–64 (8th Cir. 2019) ("*SuperValu II*"). And the Eighth Circuit requires an "individualized choice-of-law analysis" for each plaintiff's claim. *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005). As for conflict, the Opposition litigates each count under the laws of several States and concedes outcome-determinative differences among them, including that Texas does not recognize unjust enrichment as an independent claim. Opp'n 10–11, 15-16. That is a conflict under Plaintiffs' own test. Plaintiffs' opposition to Verizon's motion removes any doubt: there they plead their claims under the laws of "California, Michigan, and New York—as well as . . . Texas and . . . Missouri." Verizon

[1] On this point, Plaintiffs' reliance upon *Mackey* for the proposition that decisions about security were allegedly made in Missouri is especially curious because *after Mackey,* the court in *Colley v. Neighbors Credit Union*, No. 4:25-CV-00687-SRC, 2026 WL 864583 (E.D. Mo. Mar. 30, 2026) found that because Missouri's courts "do not impose a duty on businesses to 'protect against the criminal acts of third parties,' because criminal acts are rarely foreseeable," the Court dismissed the common law negligence claims in a putative class action because customers of a business have no "special relationship" under Missouri law to create any duty to prevent a cyber-attack. *See Id*. at *12.

Opp'n 6.

Nor would Missouri law help Plaintiffs. Missouri recognizes no general common-law duty to safeguard information against criminal cyberattack. *O.S. v. Mid Am. Physician Servs., LLC*, 2026 WL 988513, at *7 (W.D. Mo. Apr. 13, 2026); *Colley v. Neighbors Credit Union*, No. 4:25-CV-00687-SRC, 2026 WL 864583 (E.D. Mo. Mar. 30, 2026). Missouri permits negligence *per se* only where the statute creates a private right of action. *Howland v. Truman Med. Ctr., Inc.*, 719 S.W.3d 98, [pin] (Mo. App. W.D. 2025). And *Kuhns* applied Missouri law to reject the same implied-contract and unjust-enrichment theories. 868 F.3d 711, 717–18 (8th Cir. 2017).

## III. <u>The Opposition Leaves Two Dispositive Arguments Unanswered</u>

"[F]ailure to respond to arguments raised in a motion to dismiss constitutes an abandonment of that claim or concession to the opposing arguments." *Little v. United States Dep't of Def.*, 2022 WL 1302759, at *3 (E.D. Mo. May 2, 2022).

### A. Adessa Lacks Standing Altogether

Russell Cellular showed that Adessa alleges no notice letter and no fact placing any Adessa records in the affected data, and that Adessa pleads only that it "cannot be certain" what was taken. Mot. 10; Compl. ¶ 102. The Opposition refers to "Plaintiffs" collectively and never addresses Adessa. Its only arguably responsive passage is a footnote asserting that "sophisticated hackers stole their PII," citing paragraphs that describe the dataset generally rather than any record of Adessa's. Opp'n 7 n.4. Every Adessa claim, and Count 7, therefore fails.

### B. Michigan Does Not Recognize Negligence *Per Se*

Russell Cellular showed that Michigan does not recognize negligence *per se* as a standalone cause of action. Mot. 12. Plaintiffs never dispute that rule, and their only Michigan authority (*Thompson*) confirms it, treating statutory violations as evidence supporting a negligence claim rather than as a separate count. Opp'n 12.

## IV. <u>Plaintiffs Still Lack Standing</u>

### A. Plaintiffs Allege No Cognizable Injury

Plaintiffs do not dispute that the fields identified for the individual Plaintiffs are a name, a

phone number, a plan name, and an IMEI. Compl. ¶¶ 92, 109. Their "combination" argument is the one rejected in *Samsung*, where the compromised data was even broader than alleged here—contact information, IMEI numbers, and IP addresses—yet was held not "the type of information that historically has been recognized as sufficiently sensitive" to create an increased risk of identity fraud. *In re Samsung Data Sec. Breach Litig*., 761 F. Supp. 3d 781, 794 (D.N.J. 2025). Plaintiffs concede the point in opposing Verizon's motion. *See* Verizon Opp'n 9. And Plaintiffs' other cases are distinguishable.[2]

Plaintiffs' derivative injury theories also fail. Then "benefit-of-the-bargain" does not supply standing here, because *Kuhns* involved an express agreement and *SuperValu I* declined to find standing on that theory where the alleged contract was implied. 870 F.3d at 771 n.6. Plaintiffs confirm the distinction in opposing Verizon's motion, grounding the same theory in *Kuhns* and in fees paid to meet Verizon's "contractual obligations." Verizon Opp'n 9. Against Russell Cellular they say "the parties do not have a contract." Opp'n 11. Diminution in the value of a name and phone number is unquantified and speculative. *Prestby v. A&A Servs., LLC*, 2026 WL 26128, at *9–10 (D. Neb. Jan. 5, 2026). Increased spam is untraceable to these four fields, and Plaintiffs concede in opposing Verizon's motion that phone numbers "could have been obtained from a number of sources." Verizon Opp'n 10 n.4. Adessa lacks standing altogether.

**B. The Alleged Harms Are Not Fairly Traceable**

Neither of Plaintiffs' traceability points reaches the argument: time and money spent guarding against a risk the plaintiff cannot show exists is harm the plaintiff caused themselves. Opp'n 8; *SuperValu I*, 870 F.3d at 771; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Plaintiffs distinguish Shepherd only on the ground that the defendant there had confirmed the plaintiff's information was unaffected. Opp'n 8 n.5. That concedes the case as to Adessa. *Shepherd*

[2] *Richardson* is a Maryland criminal decision about device tracking. *See* Opp'n 6. *Negron* found a substantial risk because the breach involved Social Security numbers and birth dates and the plaintiffs experienced actual suspicious account activity. *Negron*, 2025 WL 2710014, at *7–8 (E.D. Mo. Sept. 23, 2025). And the Eighth Circuit denied standing to fifteen of sixteen plaintiffs whose payment-card data was stolen. *In re SuperValu, Inc*., 870 F.3d 763, 770–74 (8th Cir. 2017) ("*SuperValu I*").

*v. Cancer & Hematology Ctrs. of W. Mich., P.C.*, 2023 WL 4056342, at *6 (W.D. Mich. Feb. 28, 2023). Mitigation time is not an independent injury absent a substantial risk of future harm as that argument is "squarely foreclosed by *SuperValu*." *Pulliam v. W. Tech. Grp., LLC*, 2024 WL 356777, at *8 (D. Neb. Jan. 19, 2024).

### C. Plaintiffs Fail to State a Claim for Negligence (Count 1)

**Duty.** Russell Cellular cited the governing law of each State Plaintiffs invoke. Plaintiffs answer with federal district-court predictions, most involving Social Security numbers or financial-account data and distinguish none of Russell Cellular's authorities. Opp'n 9–11. A federal court sitting in diversity applies state law as the State's highest court has declared it. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Plaintiffs relegate *Grifo* to a footnote on an express-agreement distinction that does not touch its holding that an ordinary commercial relationship imposes no duty to prevent third-party criminal hacking. *Grifo & Co., PLLC v. Cloud X Corp.*, 485 F. Supp. 3d 885, 894–900 (E.D. Mich. 2020). Plaintiffs' parenthetical describing *Sharyland* is also inaccurate: that case involved physical property damage, and the court expressly declined to decide whether purely economic losses are recoverable in negligence. Opp'n 12 n.9.

**Economic loss.** Plaintiffs argue that the doctrine cannot apply because "the parties do not have a contract." Opp'n 11. Count 3 alleges the opposite: implied contracts containing detailed security obligations. Compl. ¶¶ 166–75. Michigan asks whether the alleged duty is separate and distinct from the parties' undertakings, and Plaintiffs locate every security obligation in the parties' "transactions and relationships." *Fultz*, 470 Mich. at 467–68; Compl. ¶ 166. The "non-economic" damages Plaintiffs invoke are monitoring time, diminished value, and spam, all economic by any measure. Opp'n 10 n.6.

**Notification.** Plaintiffs now offer the alleged notice failure only "as evidence of negligence" and assert that the delay prevented protective measures. Opp'n 12 n.8. But no Plaintiff pleads misuse during the interval, a protective step an earlier notice would have enabled, or any injury caused by timing rather than by the incident. Compl. ¶ 61.

### D. Plaintiffs Fail to State a Claim for Negligence *Per Se* (Count 2)

Beyond the unanswered Michigan rule, Plaintiffs concede that the FTC Act creates no private right of action and recast Count 2 as a standard-of-care theory. Opp'n 12. That concedes the whole point, because a statute that merely informs the standard of care supports no separate count. Texas requires a specific, judicially adoptable standard that Section 5's open-ended "unfair" practices prohibition does not supply, and New York treats a federal-statute violation as at most evidence of negligence. *Lowman v. Enter. Fin. Grp., Inc.*, 2025 WL 2778380, at *3 (N.D. Tex. Sept. 30, 2025); *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 509 (S.D.N.Y. 2023). The Missouri fallback fails on Plaintiffs' own cases: *O.S.* applied *Howland* to dismiss an FTC Act negligence *per se* claim. Finally, *SuperValu II's* holding that the FTC Act creates no private right of action construes the federal statute, and Michigan, New York, Texas, and Missouri each attach the same consequence. 925 F.3d at 963–64.

### E. Plaintiffs Fail to State a Claim for Breach of Implied Contract (Count 3)

*Kuhns* affirmed the dismissal of an implied-contract claim resting on an unspoken promise of reasonable safeguards, holding that "such a promise may not be plausibly implied." 868 F.3d at 717–18. Plaintiffs answer with *O.S.*, a district court decision that cannot displace circuit precedent and is distinguishable in any event: the plaintiffs there alleged they were required to furnish confidential information and would not have done so absent an implied promise of confidentiality. 2026 WL 988513, at *8. No Plaintiff here alleges either. The assent gap is independently fatal, because conduct manifests assent only to terms the parties actually exchanged. *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93–94 (1999); *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972); *Grifo*, 485 F. Supp. 3d at 891–94. Every security representation the Complaint quotes comes from Russell Cellular's website privacy policy, which addresses making "your visit to our site as safe as possible." Compl. ¶¶ 46–48 & nn.12–14. All three Plaintiffs plead in-person purchases, and none alleges visiting the site. Compl. ¶¶ 23–25. Plaintiffs' answer—that in-store transactions "do[] not defeat an implied contract arising from the parties' conduct," Opp'n 13–14—does not supply assent to terms no Plaintiff encountered.

The alleged terms fail for the same reason. Plaintiffs allege "reasonable measures," "industry standards," and compliance with unspecified "laws and regulations," all of which they describe as "[i]mplied in these exchanges." Compl. ¶¶ 168–69. The list of "specific" deficiencies in the Opposition is a generic inventory of everything a security program contains, offered by plaintiffs who plead that they do not know what failed. Opp'n 14; Compl. ¶¶ 65–66. That leaves the Court to guess in the way *Kuhns* forbids. Damages fail as well. Plaintiffs need not plead a "security surcharge," but they must plead some measure from which expectation damages could be computed, and the Complaint alleges only, on information and belief, that some unquantified "portion" of the price was "intended to cover" security costs, without alleging the price would have been different. Compl. ¶ 217; Opp'n 14–15; *Kuhns*, 868 F.3d at 718; *SuperValu II*, 925 F.3d at 964.

### F. Plaintiffs Fail to Allege Unjust Enrichment (Count 5)

Plaintiffs concede that their own Texas authorities "characterize unjust enrichment as an equitable theory supporting restitution rather than an independent cause of action." Opp'n 16. That disposes of Count 5 as to Burns. As to Michigan, none of Plaintiffs' authorities supplies the unjustly retained benefit required where the plaintiff received the goods and services purchased. Opp'n 16 & n.12. As to New York, *Corsello* turns on whether a conventional theory addresses the same conduct and injury – not on whether the defendant concedes liability under it. 18 N.Y.3d 777, 790–91 (2012). Counts 1 and 3 address both. The cost-savings theory then fails everywhere. Plaintiffs received what they paid for – phones and service – and allege no more than an unspecified "portion" of payments "intended to cover" security costs. Compl. ¶ 217. *SuperValu* rejected that theory where the price was the same regardless, 925 F.3d at 964, and *Kuhns* dismissed on that ground under Missouri law, 868 F.3d at 718.

### G. Plaintiffs Fail to State an MMPA Claim (Count 6)

Plaintiffs' Opposition no longer contends that any Plaintiff transacted business in Missouri. They argue instead that the MMPA reaches Russell Cellular's "centralized conduct" because the company is headquartered here. Opp'n 17. The Eighth Circuit has twice rejected that theory.


Case 6:26-cv-03218-MBB Document 43 Filed 09/09/26 Page 8 of 13

*Perras v. H & R Block*, 789 F.3d 914, 917–18 (8th Cir. 2015); *Hale v. Emerson Elec. Co.*, 942 F.3d 401, 403–04 (8th Cir. 2019). Plaintiffs' lead authority is *Estes*, but *Perras* confined it to its facts: an Attorney General enforcement action against a defendant whose entire scheme was operated from Missouri offices. 789 F.3d at 917–18. Plaintiffs' attempt to distinguish *Barker* defeats itself: there, as here, the only Missouri connection was the defendant's headquarters, where it designed, advertised, and sold the products, and the court held that insufficient. *Barker v. Nestle Purina PetCare Co.*, 601 F. Supp. 3d 464, 469–70 (E.D. Mo. 2022); *see also LaCrue v. Vexus Fiber, LLC*, 2026 WL 281138, at *4 (W.D. Mo. Feb. 3, 2026) (dismissing Texas and Louisiana residents' MMPA claims despite Missouri-headquarters conduct).

Plaintiffs' own authorities further dispose of the claim. Applying *Kuhns*, both *Negron* and *T.R.* dismissed MMPA data-breach claims because the defendant did not sell data security but merely implemented security measures in connection with selling something else. That reasoning defeats the "unfair practices" theory that Plaintiffs say escapes Rule 9(b). And to the extent Count 6 rests on misrepresentation and omission, a defendant, a policy, and a date range do not supply the particularized circumstances of any statement made to any Plaintiff. *Kuhns*, 868 F.3d at 719; *Craggs v. Fast Lane Car Wash & Lube, L.L.C.*, 402 F. Supp. 3d 605, 611 (W.D. Mo. 2019).

### H. Adessa Fails to State a Claim Under GBL § 349 (Count 7)

Count 7 belongs to Adessa alone and fails with Adessa's lack of standing. *See* Section II.A. On the merits, the only specific statements the Complaint identifies are the website policy statements, and Adessa never alleges that it visited the site. Compl. ¶¶ 46–48. In opposing Verizon's motion, Adessa identifies the representations it relies on as Verizon's privacy policy, not Russell Cellular's. Verizon Opp'n 16. What remains are generalized assurances of reasonable safeguards, which "do not constitute an unlimited guaranty that [] information could not be stolen or that computerized data could not be hacked" and do not mislead "in any material way." *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 49 Misc. 3d 1027, 1039 (N.Y. Sup. Ct. 2015); *accord Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 69 Misc. 3d 597, 609 (N.Y. Sup. Ct. 2020). Adessa also fails § 349's injury element, which requires actual pecuniary harm—more than


Case 6:26-cv-03218-MBB Document 43 Filed 09/09/26 Page 9 of 13

Article III injury in fact. *Michelo v. Nat'l Collegiate Student Loan Tr*. 2007-2, 419 F. Supp. 3d 668, 706 (S.D.N.Y. 2019); *Wright v. Publishers Clearing House, Inc*., 372 F. Supp. 3d 61, 68 (E.D.N.Y. 2019).

### I. Burns Fails to State a DTPA Claim (Count 8)

**Reliance.** Section 17.50(a)(1)(B) requires detrimental reliance. Burns pleads reliance only as a conclusion. Compl. ¶ 278. She pleads an in-person purchase and never alleges that she visited Russell Cellular's website or encountered any identified statement before buying. Compl. ¶¶ 25, 46–48. The Opposition's observation that Burns identifies "when and where she purchased devices and services" is not reliance. Opp'n 21.

**Particularity, omissions, and unconscionability.** Burns's Rule 9(b) showing is the same recitation offered for the MMPA and fails for the same reasons. *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009). The omission theory fails on the pleading's own terms, because Burns cannot plead concealment of security deficiencies that she elsewhere pleads she cannot identify. Compl. ¶¶ 65–66; *Collins v. San Antonio Dodge Chrysler Jeep Ram*, 2025 WL 3143640, at *5 (W.D. Tex. Nov. 10, 2025). It also fails on the elements: a DTPA omission claim requires that the nondisclosure was intended to induce a transaction the consumer would not otherwise have entered. Tex. Bus. & Com. Code § 17.46(b)(24). Burns alleges only that disclosure would have left Defendants "unable to continue in business." Compl. ¶ 279. The unconscionability theory remains the contention that Russell Cellular promised security and did not deliver it, which is a repackaged warranty or contract claim that the DTPA does not reach. *Hernandez v. Safariland, LLC*, 824 F. Supp. 3d 581, 597 (W.D. Tex. 2026); *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016).

**Chapter 521.** Plaintiffs do not dispute that Burns's identified fields are not "sensitive personal information" or that Chapter 521 is enforceable only by the Attorney General. They say only that her other theories "remain," and for the reasons above they do not. Opp'n 23 n.16.

### J. Plaintiffs Fail to State a Claim for Declaratory and Injunctive Relief (Count 9)

Plaintiffs recast Count 9 as "prospective relief addressing an ongoing risk." Opp'n 23. Paragraph 296(a) and (b) says otherwise, asking the Court to declare that duties were owed and breached, and those backward-looking declarations are "nothing more than a petition claiming breach of contract." Compl. ¶ 296(a)–(b); *Jameson v. State Farm Mut. Auto. Ins. Co.*, 871 F. Supp. 2d 862, 870–71 (W.D. Mo. 2012); *accord Kuhns*, 868 F.3d at 718. The remaining requests—Paragraph 296(c) and (d) and the injunction sought in Paragraph 297(a) through (j)—rest on the information-and-belief assertion that Plaintiffs' information "remains in Defendants' possession." Compl. ¶¶ 100, 108, 116, 296(c)–(d), 297(a)–(j). Possession is not vulnerability, and materially identical allegations establish only that a defendant "faces much the same risk of future cyberhacking as virtually every holder of private data." *Fitzgerald v. Jeff Anderson & Assocs., PA*, 2026 WL 2234408 (D. Minn. Aug. 3, 2026); *Devine v. Horizontal Integration, Inc.*, 2025 WL 3687972 (D. Minn. Dec. 19, 2025).

## V. <u>Conclusion</u>

Plaintiffs' single-sentence footnote request for leave to amend is not a motion. Opp'n 2 n.2. It is unaccompanied by a proposed pleading and identifies no fact Plaintiffs would add to what is already their consolidated pleading. *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884–85 (8th Cir. 2009); W.D. Mo. L.R. 15.1. For the foregoing reasons and those in its opening suggestions, Russell Cellular respectfully requests that the Court grant its Motion and dismiss all claims against it with prejudice.

Respectfully submitted this 9th day of September, 2026

**CONSTANGY, BROOKS, SMITH & PROPHETE LLP**

<u>*/s/ David A. Yudelson*</u>
David A. Yudelson*
2029 Century Park East, Suite 1100
Los Angeles, CA 90067
Tel: (310) 256-3074

dyudelson@constangy.com

Kimberly F. Seten (MO #50449)
1201 Walnut Street, Ste. 2350
Kansas City, MO 64106
Tel: (816) 472-6400
kseten@constangy.com

*Counsel for Defendant Russell Cellular, Inc.*

*admitted pro hac vice

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 9, 2026, the foregoing was filed electronically with the Clerk of Court using the CM/ECF System and was thereby served on all counsel of record.

*/s/ David A. Yudelson*
David A. Yudelson