**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JONATHAN AGUILAR-VAZQUEZ, ADESSA CONSULTING, INC. and TINA BURNS, Individually and on behalf of all those similarly situated, | ) | |
| Plaintiff, | ) | Case No.: 6:26-cv-03218-MBB |
| v. | ) | |
| RUSSELL CELLULAR, INC., and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | ) | |
| Defendants. | ) | |

**DEFENDANT CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS'S REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

## I. INTRODUCTION

Plaintiffs provide no support for their claim that the alleged data disclosure and harm at issue in this case can establish Article III standing. Instead, their opposition confirms that disclosure of phone-book-level data, price plan information, and device identifiers coupled with alleged increased spam and speculative future harm is not sufficient to establish the concrete and particularized injury required for Article III standing. The same is true on the merits. Plaintiffs cite no cases imposing a common law duty to supervise a third-party retailer's cybersecurity practices, no viable negligence *per se* theory based on the FTC Act, and no contractual language overcoming or contradicting Verizon's express disclaimer that it "can't guarantee that [its] safeguards will prevent every unauthorized attempt to access, use or disclose personal information." ECF No. 35-5 at 17. Plaintiffs' unjust-enrichment claim fails since it duplicates their contract theory; their New York and Texas statutory claims do not identify any materially misleading statement, actionable omission, or unconscionable conduct; and their declaratory and injunctive relief claims repackage the speculative future harm alleged in their other claims. Thus, their Complaint must be dismissed.

## II. ARGUMENT

### A. The Cases Cited in Opposition Do Not Support Article III Standing Here.

Plaintiffs do not allege a concrete injury fairly traceable to Verizon. Their allegations boil down to disclosure of limited information, risk of future harm, spam communications, and self-imposed mitigation or economic loss. None suffices.

<u>*Disclosure alone*</u>. Plaintiffs urge the Court to conclude that disclosure alone—regardless of the data at issue—automatically establishes Article III standing. But their cases do not support that broad conclusion. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 432–33 (2021) (finding standing only where misleading information was disseminated to a third party and caused a harm

analogous to defamation); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–42 (2016) (involving inaccurate consumer-report information and holding that bare statutory violation is insufficient for standing). And Plaintiffs' own authority describes an IMEI as a unique device identifier, not highly sensitive information. *See Richardson v. State*, 481 Md. 423, 438 n.5 (2022).

Future risk. Plaintiffs' future-harm theory remains speculative because the information at issue is not the kind of sensitive data that supports a substantial risk of identity theft or fraud. Their theory depends on the attenuated and theoretical risk that someone would combine information allegedly disclosed in this incident (name, phone number, price plan, IMEI) with other, *more sensitive* data obtained *elsewhere*, then use it to harm Plaintiffs. That is the very speculative causal chain Article III forbids. *See In re Samsung Data Security Breach Litigation*, 761 F. Supp. 3d 785, 797–98 (D.N.J. 2025). Plaintiffs' cited cases involve information that was materially more sensitive or direct misuse of such information. *See Mackey v. Belden, Inc.*, 2021 WL 3363174, at *5 (E.D. Mo. Aug. 3, 2021) (Social Security numbers and bank-account information, plus attempted tax fraud); *Perry v. Bay & Bay Transp. Servs.*, 650 F. Supp. 3d 743, 751 (D. Minn. 2023) (Social Security numbers and other sensitive PI, with alleged misuse through a bank scam); *Johnson v. Cornerstone Nat'l Ins. Co.*, No. 22-04135-CV-C-BP, 2024 WL 5265372, at *3 (W.D. Mo. Apr. 29, 2024) (driver's-license information and apparent misuse through unauthorized loan and car-rental activity).

Spam communications. Plaintiffs' allegations of increased spam texts and calls do not establish standing because they do not plausibly tie those communications to Verizon. Courts recognize spam as especially weak evidence of traceable harm because contact information can be obtained from countless other public sources. *See Negron v. Ascension Health*, 2025 WL 2710014,

at *6 (E.D. Mo. Sept. 23, 2025).[1] Perhaps for this reason, Plaintiffs primarily rely on *TCPA* cases, which find standing because under the TCPA the communication itself is the injury. *See Thompson v. Genesco, Inc.*, 2024 WL 81187, at *3 (E.D. Mo. Jan. 8, 2024); *Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 968 (E.D. Mo. 2018). And the data breach case Plaintiffs do cite involves far more sensitive data. *T.R. v. Clay-Platte Family Med. P.C.*, 24-CV-00704-SRB, 2025 WL 3143638, at *1, 4 (W.D. Mo. Nov. 3, 2025) (data included patient SSNs and medical information).

Mitigation and economic theories. Plaintiffs' diminution-in-value, mitigation, and overpayment theories fail as well. They do not allege they monetized their information, that it had an ascertainable market value, or that they suffered any realized pecuniary loss. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,* 603 F. Supp. 3d 1183, 1204 (S.D. Fla. 2022) (diminution-in-value theory based on information affecting plaintiffs' participation in the credit marketplace). In fact, the only information they provide regarding valuation is that *all* impacted individuals' data was offered for sale for $1,200. Compl. ¶ 57. Nor can they create standing by spending time or money responding to speculative future harm. *See In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017). And their overpayment theory fails because they do not allege they purchased data-security services or paid any identifiable amount for cybersecurity protection. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017) (rejecting overpayment theory where no fees were tied to data protection).

Traceability. Plaintiffs do not plausibly connect their alleged harms to this incident or to Verizon. They allege only that Verizon failed to safeguard information, unknown actors accessed it through a third party, data was offered for sale, and two Plaintiffs later received spam

[1] This is particularly true for Verizon business customers who necessarily advertise their own information.

communications or took mitigation measures. That is conjecture, not traceability. Even at the pleading stage, Article III requires more. *See SuperValu*, 870 F.3d at 768, 772.

Because Plaintiffs allege only disclosure and hypothetical downstream harms untethered to concrete misuse or other non-speculative injury, they have not established Article III standing.

### B. Plaintiffs' "Prematurity" Argument Fails

Plaintiffs' "prematurity" argument on choice of law does not prevent dismissal. They argue that Missouri choice-of-law rules apply absent an enforceable contractual choice-of-law provision, but they fail to identify any actual, outcome-determinative conflict that matters here. Missouri generally enforces contractual choice-of-law clauses absent a violation of fundamental Missouri policy, and Plaintiffs identify no such policy. *See H&R Block Tax Servs. LLC v. Franklin*, 691 F.3d 941, 943–44 (8th Cir. 2012). The other cases on which Plaintiffs rely establish only that a clause governing an "agreement" does not automatically reach every tort claim. *See Flynn v. CTB, Inc.*, 2013 WL 28244, at *3 (E.D. Mo. Jan. 2, 2013); *Kogent Holdco, LLC v. Carl Zeiss Meditec, Inc.*, 733 S.W.3d 655, 664 n.5 (Mo. Ct. App. 2026); *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687–88 (8th Cir. 2001). Verizon does not dispute this.

Instead, the crux of Verizon's argument is that Plaintiffs' claims necessarily *arise from* the Customer Agreement and Wireless Retail Account Agreement and, thus, the contractual choice-of-law provisions control. For instance, Plaintiffs' contract claim directly implicates the agreements, and their negligence, negligence *per se*, and unjust-enrichment theories do so indirectly by relying on contractual duties, benefit-of-the-bargain allegations, and efforts to avoid the agreements' risk-allocation provisions. Plaintiffs cannot sidestep those defenses by recasting contract-based grievances as tort or quasi-contract claims. *See Inacom*, 254 F.3d at 687–88. Their prematurity cases do not hold otherwise, and *Mackey* is distinguishable. 2021 WL 3363174, at *2–

3 (identifying a genuine conflict between Missouri and Indiana law and resolving it on pleaded facts centered in Missouri). And even if Missouri law applies, Plaintiffs have not cited sufficient authority showing their claims would survive under Missouri law.

### C. Plaintiffs' Merit Arguments Do Not Save Any Claim

#### 1. Breach of Express Contract

Plaintiffs' response confirms that their contract claim depends on rewriting Verizon's Privacy Policy into a guarantee of perfect security. But the Policy says only that Verizon uses safeguards to "help protect" information and expressly discloses that Verizon "can't guarantee that [its] safeguards will prevent every unauthorized attempt to access, use or disclose personal information." Compl. ¶ 186; ECF 35-5 at 17. That defeats the contract claim.

Plaintiffs identify no contract terms requiring Verizon to prevent all third-party criminal activity on its own systems *and* those of independent companies like Russell Cellular, or to assume all liability for incidents affecting third party systems.[2] Courts routinely reject claims based on generalized privacy statements that do not create the sweeping duties Plaintiffs attempt to infer here. *See, e.g.*, *Smahaj v. Retrieval-Masters Creditors Bur., Inc.*, 69 Misc. 3d 597, 607 (N.Y. Sup. Ct. 2020); *Abdale v. N. Shore Long Is. Jewish Health Sys., Inc.*, 49 Misc. 3d 1027, 1039–40 (N.Y. Sup. Ct. 2015). The claims in this case are even more attenuated because the alleged intrusion was a criminal attack on third-party systems, not Verizon's. Compl. ¶ 34. Count 4 should be dismissed.

#### 2. Negligence

Plaintiffs' negligence theory seeks to impose a common-law duty, separate from the

[2] Plaintiffs' reliance on *Baldwin* is misplaced. That case involved materially different allegations, including the alleged public posting of far more sensitive data, and it did not construe contractual language like Verizon's express disclaimer. Instead, the court accepted, at the pleading stage, allegations of promised safeguards and an implied duty to protect PII. *See Baldwin v. Nat'l W. Life Ins. Co.*, No. 2:21-CV-04066-WJE, 2021 WL 4206736, at *1–2, *6–7 (W.D. Mo. Sept. 15, 2021). That is a far cry from Verizon's policy that expressly discloses it "can't guarantee" the safeguards will prevent every unauthorized access, use, or disclosure. ECF No. 35-5 at 17.

parties' contract, requiring Verizon to oversee and guarantee the cybersecurity of independent third parties like Russell Cellular. Plaintiffs' own Complaint concedes Russell's independence. Compl. ¶ 34. That alone distinguishes the cases on which they rely.

Unlike the facts alleged as to Verizon, Plaintiffs' authorities involve defendants who *directly* hosted or controlled the compromised systems. *See Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 594–95 (S.D.N.Y. 2022); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 388–390 (E.D. Va. 2020). Those cases do not impose a common-law duty in a scenario like this, where Verizon is not alleged to have operated Russell Cellular's network, managed its security systems, or caused the intrusion into Russell's environment.

Nor do Plaintiffs' third-party-vendor cases support their negligence theory. At most, those cases suggest a duty to exercise reasonable care in selecting or contracting with a third-party recipient of data. *See, e.g.*, *In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475, at *9 (D. Mass. July 31, 2025); *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *14–15 (D.N.J. Dec. 16, 2021). They do not impose a duty to guarantee an independent company's security or prevent all third-party criminal access to it.

Plaintiffs also cannot avoid dismissal by invoking exceptions to the economic loss rule or analogous independent-duty doctrines. Even courts reluctant to apply those doctrines categorically in data-breach cases still require a duty independent of ordinary commercial expectations, and Plaintiffs allege none here. *See, e.g.*, *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 749 (S.D.N.Y. 2017); *In re Capital One*, 488 F. Supp. 3d at 397, 400–01 (duty theory based on defendants' own collection, storage, and security of the compromised data, and knowledge of a specific vulnerability); *Mackey*, 2021 WL 3363174, at *7–8 (duty arose from employer-employee special relationship, not merely contract).

Because Plaintiffs allege only economic harms arising from the parties' commercial relationship and no plausible independent tort duty, Count 1 should be dismissed.

### 3. Negligence *Per Se*

Count 2 fails for a threshold reason: Plaintiffs seek to assert negligence *per se* as a standalone claim based on a statute that does not authorize one. Their authorities do not support that theory; they undermine it. *In re Ambry Genetics Data Breach Litigation* expressly recognized that, under California law, negligence *per se* is "not a separate cause of action." 567 F. Supp. 3d 1130, 1142–43 (C.D. Cal. 2021). Yet Plaintiffs assert negligence *per se* here as a standalone count. Their reliance on *Capital One*, 488 F. Supp. 3d 374, 406–08, is likewise misplaced. Whatever persuasive force that decision might once have had, it stands against the weight of authority rejecting FTC Act-based negligence *per se* because the Act provides no private right of action and commits enforcement exclusively to the FTC. *See Toretto*, 583 F. Supp. 3d at 598–99 (collecting cases). Plaintiffs identify no authority under New York, California, or Michigan law that solves that problem. And, even assuming arguendo that Missouri law applies, as Plaintiffs claim, Missouri federal courts have rejected materially identical efforts to rely on the FTC Act or FTC guidance in this way. *See Negron*, 2025 WL 2710014, at *10. Count 2 should be dismissed.

### 4. Unjust Enrichment

Plaintiffs' unjust enrichment claim fails for two independent reasons. First, there is no dispute that a binding contract governs the subject matter of their claims. Plaintiffs rely on cases where no enforceable contract foreclosed quasi-contract relief or where the applicability of the contract was genuinely disputed, neither of which is true here. *See, e.g.*, *Sackin*, 278 F. Supp. 3d at 751–52 (allowing alternative pleading only where applicability of contract was genuinely disputed). Plaintiffs therefore cannot avoid dismissal by asserting in opposition, for the first time,

that unjust enrichment is pleaded as an alternative to their *express* contract theory. The Complaint says otherwise: it pleads unjust enrichment only as an alternative to Plaintiffs' *implied*-contract claim.[3] *See* Compl. ¶ 215. Second, Plaintiffs allege no unjust benefit. Their theory is that Verizon received payment for wireless service and saved money by not spending more on cybersecurity. That is not unjust enrichment. It is a deficient-performance theory. *See Metal Cladding, Inc. v. Brassey*, 159 A.D.2d 958, 958 (4th Dep't 1990) (no unjust enrichment where plaintiff received the benefit of the services); *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 617–18 (E.D. Mich. 2017) (dismissing unjust-enrichment claim under Michigan law where plaintiffs did not confer a direct benefit on defendant). Count 5 should thus be dismissed.

**5. GBL § 349**

Adessa's § 349 claim fails because the challenged statements are too general and too qualified to mislead a reasonable consumer. Verizon's Privacy Policy says Verizon uses safeguards to "help protect" information and cannot guarantee those safeguards will prevent every unauthorized attempt to access, use, or disclose personal information. ECF 35-5 at 17. No reasonable consumer could read that language as a promise of breach-proof security or guarantee of an independent third party's systems.

Plaintiffs' effort to reframe the claim as one about the "existence and implementation" of safeguards changes nothing. They seek to convert broad, qualified privacy statements into actionable representations that Verizon maintained specific controls sufficient to prevent the specific type of alleged breach that happened here. Their cited cases do not support that theory. *See Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24–26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995) (reciting the general § 349 standard); *Stutman v.*

[3] Notably, Plaintiffs' Breach of Implied Contract claim is only brought against Defendant Russell Cellular.

*Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000) (same); *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 565–66 (S.D.N.Y. 2016) (product-marketing claims); *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (payment for promised service not received); *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *14–15 (S.D.N.Y. Mar. 23, 2021) (privacy policy stating defendants were "committed to protecting medical information," without disclaiming inability to guarantee the safety of that information). Nor do Plaintiffs allege a distinct deceptive omission; their theory remains only that Verizon's data security was inadequate and a later intrusion of third-party systems occurred. And they cannot use § 349 to enforce the FTC Act indirectly. *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 776–77 (W.D.N.Y. 2017). Count 6 should be dismissed.

### 6. Texas Deceptive Trade Practices Act

Burns's TDTPA claim fails on the merits because it sounds in fraud but does not satisfy Rule 9(b). A fraud-based DTPA claim must plead the who, what, when, where, and how of the alleged misrepresentation or omission. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (applying Rule 9(b) to DTPA claim); *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 836 (S.D. Tex. 2011) (same). Burns' complaint does not come close. She identifies no specific Verizon speaker, no transaction-specific statement, and no facts showing why any statement was false when made. Instead, she relies on generalized privacy and security statements.

Her omission theory fails too. A DTPA failure-to-disclose claim requires facts showing the information was known at the time of the transaction, withheld to induce the transaction, and material to the plaintiffs' decision. *See Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 480 (E.D. Tex. 2021). The cases Plaintiffs cite involved specific false or omitted statements, which were not

present or alleged here. *See Cajo Enters., Inc. v. Hartford Ins. Grp., Inc.*, 2025 WL 4054873, at *4-5 (E.D. Tex. Oct. 30, 2025); *Lee v. Samsung Elecs. Am., Inc.*, 2022 WL 4243957, at *4 (S.D. Tex. Sept. 13, 2022). Count 8 should be dismissed.

#### 7. Declaratory and Injunctive Relief

Plaintiffs' declaratory and injunctive relief claims add nothing. Their allegations that Defendants continue to possess class members' PII and maintain "inadequate" security are conclusory and do not identify any concrete, ongoing Verizon-specific deficiency creating a live controversy distinct from the past breach. The out-of-district cases Plaintiffs cite involved different allegations, including concrete disputes over current security practices, ongoing vulnerabilities, or continued storage of data on the defendant's own systems. *See In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d at 414–15 (distinct controversy concerning current security practices and continued storage of PII); *In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475, at *57 (distinct forward-looking controversy based on inadequate software's security and continued risk of compromise); *In re Netgain Tech., LLC*, 2022 WL 1810606, at *17 (D. Minn. June 2, 2022) (ongoing inadequate security for data stored on cybersecurity vendor's own servers). More fundamentally, Plaintiffs' requested declarations merely restate the merits of their substantive claims, and their requested injunction seeks operational changes based on the same alleged misconduct. Missouri federal courts dismiss declaratory claims as duplicative. *See LO NG Pharmacy Corp. v. Express Scripts, Inc.*, 747 F. Supp. 3d 1203, 1208 (E.D. Mo. 2024); *Morningstar, LLC v. Hardee's Food Sys., Inc.*, 2009 WL 36406 , at *4 (E.D. Mo. Jan. 6, 2009).

## III. CONCLUSION

For the foregoing reasons, Verizon respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety, with prejudice.

Dated: September 9, 2026

Respectfully submitted,

*/s/ Taylor C. Spillers*
Taylor C. Spillers (MO #74846)
**HUNTON ANDREWS KURTH, LLP**
600 Travis Street
Suite 4200
Houston, TX 77002
Tel: (713) 220-4934
tspillers@hunton.com

Tara L. Elgie*
**HUNTON ANDREWS KURTH, LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel: (804)-788-8200
telgie@hunton.com

*admitted pro hac vice

*Counsel for Defendant Cellco Partnership d/b/a Verizon Wireless*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 9, 2026, the foregoing was filed electronically with the Clerk of Court using the CM/ECF System and was thereby served on all counsel of record.

*/s/ Taylor C. Spillers*
Taylor C. Spillers